Town of Readsboro v. Town of Woodford.

January Term, 1904.

Present: Rowell, C. J., Tyler, Munson, Start, Watson, Stafford, and Haselton, JJ.

Opinion filed May 21, 1904.

*Towns—Corporate Existence—Charter—Legalized by Acquiescence.*

When a town has for more than one hundred years, with the consent of the State, assumed and exercised the powers and privileges of a town, the validity of its charter cannot be questioned.

PETITION brought to the Supreme Court for Bennington County at its October Term, 1901, under V. S. Chap. 140, for the establishment of the division line between the towns of Readsboro and Woodford. Heard at the January Term, 1904, on report of commissioners.

The line in controversy and the questions in respect thereof are the same as in *Town of Searsburg* v. *Town of Woodford, ante.* The opinion states the facts.

*O. E. Butterfield* and *Waterman & Martin* for the petitioner.

*Batchelder & Bates* for the petitionee.

ROWELL, C. J. The case is essentially like *Searsburg* v. *Woodford, ante,* except that here the validity of the plaintiff's charter, which covers the disputed strip, is called in question. Said charter was granted on the 24th day of April, 1770, to John Reade and his associates, by Cadwallar Colden, Lieutenant Governor and Commander-in-Chief of the Province of New York, and was signed, "Clarke," and not otherwise, and

it does not appear who "Clarke" was. The land granted was thereby created into a township by the name of Readsboro, upon the inhabitants of which were conferred all the powers, authorities, privileges, and advantages theretofore given and granted to, or legally enjoyed by, all, any, or either of the King's other townships within said province; and it was thereby ordained and established that there should be forever thereafter in said township certain officers, elected and chosen yearly out of the inhabitants thereof.

In 1781, a tract of land four miles square was taken from the north end of Readsboro by this State, and created into the town of Searsburg; but the rest of Readsboro has been permitted to remain as chartered by New York.

Readsboro offered in evidence a certified copy of her charter from the office of the Secretary of State of the State of New York, to the admission of which the defendant objected, for that the Colonial Governor of New York could not grant charters of townships in the New Hampshire Grants; and for that said copy was not properly certified, as it bore the signature of "Clarke," instead of the signature of the Lieutenant Governor. But the copy was admitted, and the defendant now objects that said charter is no charter, and can have no force nor effect as such, as it is signed by no authority authorized to grant the same, and that the government of New York, at the time the instrument is dated, had no authority to issue a charter within the territory now constituting Vermont, but was expressly prohibited therefrom by an order of the King in Council; that consequently the boundaries of Readsboro extend only to the line of actual occupation, at least as against any prior occupancy of Woodford; that as far as Readsboro has exercised jurisdiction, it has been recognized as a town, and those boundaries have become fixed; but beyond that it cannot go.

But the defendant cannot attack the legality of Reads-
boro's charter.   When a municipal corporation has assumed
under color of authority, and exercised for a considerable
time with the consent of the state, the powers and privileges
of such corporations, a private party in private litigation can-
not question the legality of its existence.   1 Mod. Law Muni-
cip. Corp. § 59; 1 Dill. Municip. Corp. 4th ed., § 43a; Cooley,
Const. Lim., 7th ed., 363, 364.   This proposition is supported'
by all the cases on the subject.

Thus, in *Shapleigh* v. *San Angelo,* 167 U. S. 646, 651,
it is said to be the general rule that the state, being the creator
of municipal corporations, is the proper party to impeach the
validity of their creation; that if the state acquiesces in the
validity of a municipal corporation, its corporate existence
cannot be collaterally attacked.   So in *Graham* v. *City of
Greenville,* 67 Texas, 62, 67, it is said that if a municipality
has been illegally constituted, the state alone can take advan-
tage of the fact and in a proceeding instituted for the purpose
of testing the validity of its charter.   In *The Inhabitants of
Fredericktown* v. *Fox,* 84 Mo. 59, the defendant offered to
show that the plaintiff was not a corporation.   But the court
would not permit it, and said that such a question should be
raised by the state itself, and that a private person cannot
directly nor indirectly usurp this function of the government.

Nor can the state itself question the legality of a muni-
cipal charter after long acquiescence in its validity.   Thus,
*The People* v. *Maynard,* 15 Mich. 463, was *quo warranto*
against the defendant for intruding into and usurping the
office of county treasurer, based upon the claimed unconstitu-
tionality of a certain county act.   The court said that if the
question had been raised immediately, it was not prepared to
say that it would have been altogether free from difficulty;

but that inasmuch as the state of things in question had been acted upon for ten years, and been recognized as valid by all parties interested, it could not be disturbed; that in public affairs, when the people have organized themselves under color of law into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising the usual franchises of such corporations, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and that the corporate standing of the community could no longer be open to question.   So in *State* v. *Leatherman*, 38 Ark. 81, the court would not allow the State on *quo warranto* after nine years of acquiescence to question the legal existence of a town corporation, the proceedings to incorporate which had been had before a court without jurisdiction to entertain them. There are many more cases to the same effect, but it is unnecessary to refer to them.

Readsboro has assumed and .exercised the powers and privileges of a town for more than a hundred years with the consent of the State, whereof we take judicial notice, as it is shown by divers public statutes, passed from time to time since 1797, when, for the first time, she was included by name in Bennington County as one of the towns thereof.   Her charter, therefore, has long since become legalized by recognition and acquiescence.

*Judgment that the report of the commissioners is accepted; that the charter line therein established as the division line between the towns is, and shall be, the division line between them; and that the petitioner recover its costs.*