[L. A. No. 2358. In Bank.—December 17, 1909.]

## E. E. KEECH, Respondent, v. J. C. JOPLIN, County Treasurer of Orange County, Appellant.

JURISDICTION OF SUPREME AND DISTRICT COURTS OF APPEAL—CONSTITUTIONAL LAW—AMENDMENT OF 1904—APPEALS INVOLVING LEGALITY OF TAX.—The amendment of 1904 to section 4 of article VI of the constitution, defining the respective jurisdictions of the supreme court and of the district courts of appeal, was intended to modify the previous construction that had been placed on the clause relating to supreme court jurisdiction, and to diminish the jurisdiction formerly vested therein. The provision regarding the supreme court jurisdiction, with respect to appeals in all cases at law which involve the legality of any tax, etc., although unchanged in its verbiage, should now be construed as having a meaning somewhat different from that formerly ascribed to it, so as to give the district courts of appeal full jurisdiction of all classes of cases expressly assigned to them.

ID.—JURISDICTION OF DISTRICT COURTS OF APPEAL—APPEALS INCIDENTALLY INVOLVING MATTERS WITHIN SUPREME COURT JURISDICTION.—Under that amendment, the district courts of appeal have appellate jurisdiction in all cases specifically mentioned as belonging to its jurisdiction, although they may incidentally involve the title to or possession of real estate, or the legality of a tax, impost, assessment, toll, or municipal fine.

ID.—MANDAMUS—PAYMENT OF WARRANT AGAINST PROTECTION DISTRICT—LEGALITY OF TAX.—The district court of appeal has jurisdiction of an appeal in a proceeding in *mandamus* to compel the payment of a warrant out of the general fund of a protection district organized under the Act of February 23, 1907 (Stats. 1907, p. 16), not-

CLVII Cal.—1

withstanding the question of the legality of the tax from which the fund was derived is incidentally involved in the proceeding.

ID.—PROTECTION DISTRICT—TITLE OF ACT OF FEBRUARY 23, 1907.—The act of February 23, 1907 (Stats. 1907, p. 16), for the organization and government of districts for the protection of the lands of farming or other communities from overflow from the waters of unnavigable streams, is not void because of any fault in its title. The title expresses the subject of the act with unnecessary particularity, and the details provided for in the act, but not expressed in the title, are incidental to the main subject which is expressed.

ID.—PROVISION GUARDING AGAINST REPEAL OF PRIOR ACTS.—The act is not rendered inoperative by reason of the provisions of section 92 thereof, declaring that it does not supersede or repeal previous acts on the same general subject, but is intended as an independent and alternative means of effecting the protection therein provided for "where the provisions of this act are most applicable or desirable to the parties interested."

ID.—PROVISION ALLOWING NON-RESIDENT LANDOWNERS TO VOTE.—The amendment of section 6 of the act, allowing any owner of land in the district to vote, although he may not be a resident therein, if invalid, would not affect the act which it purported to amend.

ID.—ACT IS NOT SPECIAL LEGISLATION.—The act does not violate the inhibitions of the constitution against local or special legislation because it prescribes certain rules of procedure in certain actions, authorized by the act, to contest elections therein provided for and to establish the validity of bonds of the district, or because it prescribes certain duties for county officers of the counties in which such districts are located, not required of other county officers. Even if such incidental provisions were invalid, the remaining main parts of the act would not be affected.

ID.—AREA OF DISTRICT—SINGLE COMMUNITY OR NEIGHBORHOOD.—Sections 1 and 2 of the act are not to be construed to limit the area of any district to a territory which might afterwards be ascertained and determined by a court to be a single community or neighborhood, or so as to give a court power to declare the district organization invalid if it should find that the boundaries included what it deemed to constitute two or more such communities or neighborhoods.

ID.—TERRITORIAL EXTENT OF DISTRICT.—The act authorizes a district to be organized which embraces what may, in a sense, be considered two or more communities or neighborhoods, provided the lands lie in one body, are liable to damage from the same stream, and may be protected therefrom by the same system of works.

ID.—PETITION FOR ORGANIZATION OF DISTRICT—REFERENCE TO ACT.—The requirement of section 2 of the act, that the petition for the organization of the district "shall pray that the same be organized under the provisions of this act," is sufficiently complied with if the petition, in some reasonably certain manner, identifies the act

as the one under which it is proposed to organize. An erroneous reference to the act as having been approved on February 22, 1907, instead of February 23, 1907, the correct date, is immaterial, if the petition otherwise identifies the act by a reference to its title, which is set forth *in hæc verba.*

ID.—TAXES LEVIED FOR SEVERAL PURPOSES—APPORTIONMENT—POWER OF TREASURER.—Where the district had levied a certain rate of tax for the bond fund and an additional rate for the general fund, and the taxes collected consisted of general payments made by property-owners for both such purposes, the county treasurer, under section 45 of the act, was without power to arbitrarily apportion all the money so collected to one fund. It was his duty to apportion to the respective funds, the proper proportion of the money received in payment of the general taxes, calculated upon the rate fixed for each fund.

ID.—VALID TAX LEVIED FOR SPECIFIED PURPOSE—INVALID TAX LEVIED FOR ANOTHER PURPOSE.—A tax levied for the general fund of such a district, which is in all respects regular, is not affected by the illegality of a levy for the bond fund. The invalidity of the latter levy is not a defense to the payment of a claim properly chargeable against the general fund.

ID.—VALIDITY OF DE FACTO DISTRICT—INDIVIDUAL CANNOT QUESTION.— The validity of the organization of a *de facto* protection district cannot be questioned by private individuals, but only in a proceeding in *quo warranto* at the suit of the state.

APPEAL from a judgment of the Superior Court of Orange County and from an order refusing a new trial. Z. B. West, Judge.

The facts are stated in the opinion of the court.

H. C. Head, B. T. Williams, and Hutton & Williams, for Appellant.

E. E. Keech, *in pro. per.,* for Respondent.

SHAW, J.—The defendant appeals from a judgment in *mandamus* directing him to pay to the plaintiff the sum of five hundred dollars out of the money in his hands as county treasurer belonging to the general fund of the Newbert Protection District, in satisfaction of a warrant for that sum issued to the plaintiff by the directors of said district.

The appeal was taken to the district court of appeal for the second district. The fund of the district, alleged to be in

defendant's hands and applicable to the payment of the plaintiff's warrant, was raised by taxation of the property within the district. The Newbert Protection District was organized under the provisions of an act approved February 23, 1907 (Stats. 1907, p. 16), and is a public corporation, or state agency, designed to make and maintain such protective works and structures as may be necessary and convenient to prevent damage to land and property from the waters of streams. One of the alleged defenses to the action is that the tax aforesaid was invalid because it was levied at the same time and by the same order as an additional levy to raise money to pay interest on bonds of the district. This additional levy is said to be invalid because at the time it was ordered no bonds had been issued, and the argument is that the invalidity of the bond interest tax vitiates the tax for the general fund. The district court, deeming itself without jurisdiction because the validity of this tax was involved, transferred the case to this court. We will first consider whether or not that court had jurisdiction.

The successive provisions of the state constitution giving appellate jurisdiction to the supreme court have been productive of not a little difficulty in their application and construction. Section 4 of article VI of the constitution of 1849 gave it appellate jurisdiction "in all *cases* when the matter in dispute exceeds two hundred dollars, when the legality of any tax, (etc.) is in question, and in all criminal cases" of felony. It was held that the first clause of this sentence was independent of the second, so that the court had jurisdiction where the matter in dispute exceeded two hundred dollars, whether the legality of a tax was involved or not. (*Conant v. Conant,* 10 Cal. 249, [70 Am. Dec. 717].) In 1862 the article was amended so as to give the supreme court appellate jurisdiction "in all cases in equity; also in all *cases at law* which involve the title or possession of real estate, or the legality of any tax (etc.), or in which the demand, exclusive of interest or the value of the property in controversy amounts to three hundred dollars." In the same language it gave the former district trial courts original jurisdiction of the same matters. (Sec. 6.) There are cases formerly cognizable in the common law courts, and therefore "cases at law," which do not involve real estate, or the legality of any tax (etc.),

or property or rights measurable in money, or of the value of three hundred dollars. The question arose whether the district courts had jurisdiction of cases in *mandamus, certiorari,* and prohibition, as they had theretofore had, the specific case being *mandamus* to compel payment of a warrant for less than three hundred dollars. The court was driven to hold that the above language must be construed to include *all* cases at law, and not merely cases at law of the character thereby described. (*Perry* v. *Ames,* 26 Cal. 383.) In *People* v. *Rosborough,* 29 Cal. 415, this interpretation was applied to the provision concerning the supreme court and was extended so as to give the supreme court appellate jurisdiction in cases of insolvency, such cases being classed among "cases at law." In *Knowles* v. *Yeates,* 31 Cal. 84, it was further enlarged so as to include appellate jurisdiction of contests of election. In the separate opinions of Justices Temple and Wallace in *Houghton's Appeal,* 42 Cal. 60, 64, the reasoning of *Knowles* v. *Yeates* is sharply criticised, but the point was not involved and the previous cases were not overruled. The supreme court continued thereafter to exercise appellate jurisdiction in accordance with the principle established in *Knowles* v. *Yeates* and *People* v. *Rosborough.* Section 4 of article VI of the constitution of 1879, so far as this point is concerned, was in the same language as the amendment of 1862 to the constitution of 1849, and necessarily had the same meaning. This was the condition when the amendment of 1904 to section 4, which we are now considering, was adopted. The provision regarding the supreme court was not changed by this amendment, unless its meaning is modified by the subsequent clause prescribing the jurisdiction of the district courts of appeal created by that amendment.

Section 4, upon this subject and with respect to the supreme court, now reads thus: "The supreme court shall have appellate jurisdiction on appeal from the superior courts in all cases in equity, except such as arise in justices' courts; also, in all cases at law which involve the title or possession of real estate, or the legality of any tax, impost, assessment, toll, or municipal fine, or in which the demand, exclusive of interest, or the value of the property in controversy, amounts to two thousand dollars." The corresponding provision giving jurisdiction to the district courts of appeal is as follows: "The

district courts of appeal shall have appellate jurisdiction on
appeal from the superior courts in all cases at law in which
the demand, exclusive of interest, or the value of the property
in controversy, amounts to three hundred dollars, and does
not amount to two thousand dollars; also in all cases of for-
cible and unlawful entry and detainer (except such as arise
in justices' courts), in proceedings in insolvency, and in
actions to prevent or abate a nuisance; in proceedings of
*mandamus, certiorari,* and prohibition, usurpation of office,
contesting elections, and eminent domain, and in such other
special proceedings as may be provided by law (excepting
cases in which appellate jurisdiction is given to the supreme
court.)''

It is a matter of history that the reason which led to the
creation of the district court of appeal by this amendment was
the great congestion of cases constantly accumulating in the
supreme court, which that court could not dispose of within a
reasonable time, a condition then rapidly growing worse. The
object was to provide courts to which should be given a part of
the appellate jurisdiction previously vested in the supreme
court; to divide the burden of litigation and increase the force
working to dispose of it. The obvious intention of the clauses
above quoted was to apportion the cases so that each court
would have a share of the work proportioned to its capacity
to dispatch it; to so divide the labor that one court would
not be idle while another was overburdened with the cases
properly assignable to it under the classification that was
made. It was recognized that an absolutely correct appor-
tionment was difficult, in the absence of any statistics of the
average number of cases belonging to the respective classes,
and in view of the varying conditions which might arise in
the future tending to increase one kind of litigation and de-
crease another. To obviate the effects of any inequality in the
apportionment of the jurisdiction between the respective
courts, or in delimiting the districts of the state assigned to
the several courts of appeal, which might render the burdens
unequal, the amendment made the wise provision that the
supreme court should have control of the entire work of both
courts and should have power at will to transfer cases pending
from one district court to another, from a district court to the
supreme court, or from the supreme court to a district court,

and to change the limits of the several districts, thus enabling it to keep the work properly distributed in case experience proved that the constitutional distribution was unequal.

It is plain from these circumstances that the clause prescribing the jurisdiction of the district courts of appeal was intended to modify the previous construction of the clause relating to supreme court jurisdiction, and to diminish the jurisdiction formerly vested in the supreme court. The provision regarding the supreme court jurisdiction, though unchanged in its verbiage on the point here involved, must be considered as having now a meaning somewhat different from that formerly ascribed to it. It is modified to the extent necessary to give the district courts full jurisdiction of the classes of cases expressly assigned to them. The result will be what the framers of the amendment evidently intended,—namely, that the district courts of appeal will have appellate jurisdiction in all cases which the amendment specifically mentions as belonging to its jurisdiction, although they may incidentally involve the title or possession of real estate, or the legality of a tax, impost, assessment, toll, or municipal fine. These things, or some of them, may be involved in cases of *certiorari, mandamus,* prohibition, unlawful and forcible entry and detainer, insolvency, condemnation proceedings, or in actions to prevent or abate a nuisance, but the fact that they are so involved in such a case will not deprive the district courts of appeal of appellate jurisdiction thereof. This construction has the additional advantages of being the most easily understood, and the most practical in operation.

The conclusion necessarily follows that the district court of appeal had jurisdiction of the appeal in this case and that it should not have transferred the case to this court. The case was regularly ordered submitted to this court by agreement of the parties at the April session of 1909, to take effect when the briefs should be filed. This court was not then informed of the fact that the appeal was originally taken to the district court of appeal. The briefs have all been filed and the case is now ready for disposition. In view of these circumstances, we think it advisable to retain the case in this court. It is now ordered that the case be transferred from the district court of appeal of the second district, to the supreme court for determination and judgment. Perhaps the order of sub-

mission would have like effect, but to prevent question we make the formal order.

The defendant contends that the law under which the district was organized is unconstitutional, that the district was not legally organized under it, and that the court erred in excluding evidence offered by the defendant.

It is claimed that the act is void because it embraces more than one subject and that the subjects are not expressed in the title. The title is as follows:—

"An act providing for the organization and government of districts for the protection of the lands of farming or other communities or neighborhoods within this state from overflow or damage from the waters of any unnavigable stream, watercourse, cañon, or wash extending by, through, or over such communities or neighborhoods, and to provide for the acquisition of lands, rights of way, and other property by purchase, gift, or condemnation, and for extending, straightening, locating, improving and maintaining the channels of such streams, watercourses, cañons, or washes, and confining said waters in such channels and preventing the overflow thereof, and for the construction by such districts of the necessary works for said purposes."

If we were inclined to criticise this title we should say that it was faulty because of its unnecessary prolixity in giving the details of the subject to which the act relates. If the title had been simply, "An act to provide, govern and maintain local districts for the protection of lands from overflow or damage from the waters of any unnavigable stream," its sufficiency might not have been questioned. But because of the unnecessary subdivision of the main subject, objection is now made to it because it does not also mention all the other particulars, such as the calling and holding of elections, levying and collecting of taxes, assessment of property, voting and issuing of bonds, the qualifications of electors, and certain matters of procedure in civil actions, all of which, being incidental to the main purpose of the act, are provided for in its various sections. We are of the opinion that the title expresses the subject of the act with unnecessary particularity, and that the details provided for in the act, but not expressed in the title, are incidental to the main subject which is expressed, and that the act is not void because of any fault in its title.

It is further contended that the act is inoperative because of the provisions of section 92, which read as follows: "This act is not intended to supersede or repeal any other act for the organization of reclamation or protection districts or for protection purposes, but is intended as an independent and alternative means of effecting the protection herein provided for where the provisions of this act are most applicable or desirable to the parties interested." This section, it is urged, makes the act entirely inoperative until the landowners of some district desire to avail themselves of its provisions. It is argued that this makes the existence of the law as a statute in force depend on the action or non-action of the persons who may be concerned, and that this is an unauthorized delegation of the legislative power. This, however, is not the effect of the section. Its purpose was merely to prevent the complications which frequently arise from the enactment of a new law upon a subject to which previous laws also apply. Doubts often arise whether or not there is an implied repeal of previous laws. To remove all these doubts section 92 was enacted, declaring that it does not repeal or supersede previous acts. It has no other effect and it does not make the act invalid.

Section 6 of the act was amended shortly after the passage of the main act, the amendment providing that any owner of land in the district may vote, although he may not be a resident therein. It is unnecessary to determine whether this amendment is valid or invalid. The appellant concedes that the election was not affected by votes of landowners not residing in the district. If the amendment is invalid, it would not affect the act which it purports to amend.

Another objection is that the act violates the constitution because it prescribes certain rules of procedure in certain actions, authorized by the act, to contest elections therein provided for and to establish the validity of bonds of the district; also, because it prescribes certain duties for county officers of the counties in which such districts are located, not required of other county officers, all of which, it is argued, is local and special legislation. There is no force in these objections. The act is general because it applies generally throughout the state. It is not made special or local by reason of the fact that districts may not be organized in every county. The rules of procedure are fixed for the class of actions

authorized by the act. These actions are in the nature of special proceedings, they are of a class by themselves and it is no violation of the constitutional provisions against special legislation to provide particular rules of procedure applicable only to these peculiar proceedings. Furthermore, even if these provisions were invalid for this reason, they are not vital to the main purposes of the statute, nor essential to its practical operation, but are only incidental and auxiliary thereto. It is evident that if the act had been passed with these features omitted, its usefulness would not have been seriously impaired by the omission. The invalidity of such unimportant provisions would not destroy the other parts of the act.

Numerous objections are made to the validity of the proceedings taken for the organization of the district. The first one we will notice is that the whole proceeding was void because the district described in the petition, and which by the final order was declared to be a protection district, embraces more than one farming neighborhood. This, it is claimed, is contrary to the provisions of the act. On this subject the act provides as follows:—

"Sec. 1. Whenever fifty, or a majority of the owners who are also the owners of a majority of the lands of any farming or other community or neighborhood within this state, which lands lie in one body and are liable to overflow or damage from the waters of any unnavigable stream, watercourse, cañon, or wash extending by, through, or over such community or neighborhood, and may be protected by the same system of works, desire to provide for the protection of such lands from said damage, they may propose the organization of a protection district under the provisions of this act, and when so organized, such district shall have the powers, rights and duties conferred, or which may be conferred by law upon such protection districts. . . .

"Sec. 2. In order to propose the organization of a protection district, a petition shall be presented to the board of supervisors in the county in which the lands of the community or neighborhood and within the proposed district, or the greater portion thereof, are situated, signed by the required number of owners of lands within such proposed district, as above provided, which petition shall set forth and particularly describe the proposed boundaries of such district and the pur-

poses of such organization, and shall pray that the same be organized under the provisions of this act."

We are of the opinion that these provisions are not to be construed to limit the area of any district to a territory which might afterwards be ascertained and determined by a court to be a single community or neighborhood, or so as to give a court power to declare the district organization invalid if it should find that the boundaries included what it deemed to constitute two or more such communities or neighborhoods.

In this state, where the mountain cañons discharge streams upon the more gently sloping plains, the effect always is that the sand and gravel, which the rapid torrent of the cañon carries in suspension, begin to be deposited in the stream bed as soon as it reaches the less precipitous plain. The result is a constant tendency to fill the bed of the stream, causing the water to overflow and find other channels, running over and through lands occupied by orchards, vineyards, and grain fields, to the great damage of the lands in its course. Damage also comes from the water being too rapidly carried to the lower lands. It is not lawful or just for the owners above to change the natural course of the stream to the detriment of those below. To give adequate, practical, and lawful protection against the stream, it is necessary that all whose lands are likely to be affected by changes in its course should unite to keep the channel open and clear to some point below; a point where the water can be discharged without serious damage; and that all subject to flood shall have a common plan for protection therefrom; otherwise there would be endless conflict between the upper and lower systems. The act in question deals with conditions such as these and its main purpose, so far as the boundaries of the districts are concerned, is to put into a single district all the lands which are so situated with reference to the stream that they are liable to damage therefrom, or from its departure from its channel, and which may be protected from such damage by the same system of works, so that the respective landowners can unite their efforts and funds for their mutual and more effectual protection, without detriment to any. The term "community," properly speaking, refers rather to the people who reside in a given locality in more or less proximity, than to the territory which includes them. The term "neighborhood" describes a territory

of indefinite size and without fixed limits. What one person would consider a single community or neighborhood, another might believe to embrace two or more communities or neighborhoods. It was the two considerations of identity of the cause of danger and feasibility of protection by the same means or system, which were intended to constitute the controlling factors in determining the area and boundaries of the districts to be organized under the act. The mention of a community and neighborhood is to be taken as matter of description, but not of limitation, and the other factors are to be given controlling force. In view of the evident object of the act, the conditions to which it was intended to apply, the remedy it was designed to afford, and the immediate context relating to the same point, the rule that the singular includes the plural should be applied to the words, "community or neighborhood," in the respective introductory sentences of sections 1 and 2 of the act. Thus understood, a district may be organized which embraces what may, in a sense, be considered two or more communities or neighborhoods, provided the lands lie in one body, are liable to damage from the same stream and may be protected therefrom by the same system of works. The petition in the present instance stated the necessary facts to bring it within the scope of the act as thus construed, and it was therefore sufficient in this particular.

Another objection is that the petition states that the petitioners propose the organization of the district "under the provisions of an act of the legislature of the state of California, entitled: (here the petition gives the title of the act in full as heretofore quoted), duly approved February 22, 1907." The act appears to have been approved on February 23, 1907. Section 2 of the act requires that the petition "shall pray that the same be organized under the provisions of this act." It is claimed that the inaccuracy in the date of the approval of the act, as recited in the petition, makes the proceeding void. There is no sound reason for giving it such effect. It is sufficient if the petition, in some reasonably certain manner, identifies the said act as the one under which it is proposed that the district shall be organized. The extremely long and prolix title of the act is set out in full in the petition. There is no other statute of this state so entitled, and there is no statute of any kind that was approved on February 22, 1907. The

identification of the act is complete and unmistakable and the error in the date is immaterial.

The defendant refused to pay the warrant upon the ground that there were no funds with which to pay the same. The district had levied a certain rate of tax for the bond fund and an additional rate for the general fund. The warrant of the plaintiff was payable out of the general fund. Collections had been made of these taxes from time to time, amounting to something near four thousand dollars. The defendant, as county treasurer, had arbitrarily transferred to the bond fund the whole amount collected, and upon that fact he based his statement that there was no money in the general fund out of which to pay this warrant. The taxes collected consisted of general payments by property-owners of the taxes upon their property within the district, including both the amount levied for the general fund and that for the bond fund. The act (sec. 45) directs the creation of the bond fund, construction fund, general fund, and funding fund, and declares that the moneys properly belonging to these funds shall be apportioned to them by the treasurer. This does not give the treasurer an arbitrary power to apportion the money all to one fund. What is meant by the direction to him to apportion to the funds the moneys properly belonging to them, is that he shall give to each the proper proportion of the money received in the payment of the general taxes, calculated upon the rate fixed for that fund. When apportioned in this manner there was money enough in the treasury belonging to the general fund to pay the warrant of the plaintiff.

It is claimed that the tax is illegal because a large proportion of the levy was for purposes of raising money to pay the interest on bonds authorized to be issued by the district, and that at the time of the levy and collection of the tax no bonds had been sold. It is immaterial whether the levy for the bond fund was valid or not. It is not asserted that the levy for the general fund is in any respect irregular, and as the plaintiff's claim is against the general fund and he seeks payment out of that fund alone, the invalidity of the levy for the bond fund is no defense to the payment of his claim.

Upon the trial the defendant offered to prove that the signers to the original petition for the organization of the district did not own a majority of the lands of the district, but

only a little over one third thereof. This proof was offered for the purpose of having the district declared invalid. The recital in the record of the proceedings before the board, upon the petition, is that the board determined that the petition complied in all respects with the law. We do not think it necessary to determine what effect such proof would have upon the validity of the district, or whether it would be admissible in any collateral attack thereon. The present action is an action against the treasurer of the county to compel the payment of a claim. The evidence abundantly shows that the district has been organized and that it has been acting as a district. In other words, that it is a *de facto* district. It is a public corporation of a similar character to irrigation districts and reclamation districts. The law is well settled that the validity of the organization of such a district cannot be questioned by private individuals, but only in a proceeding in *quo warranto* at the suit of the state. (*Quint* v. *Hoffman,* 103 Cal. 506, [37 Pac. 514, 777]; *Reclamation District* v. *Turner,* 104 Cal. 335, [37 Pac. 1038].) The evidence was properly rejected by the court below. It may be here remarked that several other objections which we have considered might have been dismissed upon the same ground, but we deemed it best to decide them upon the merits. There are no other points requiring consideration.

The judgment and order denying a new trial are affirmed.

Angellotti, J., Sloss, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.