THE PEOPLE ex rel. Frank C. Vaughn, County Collector, Appellee, vs. A. CECIL WELCH et al. Appellants.

*Opinion filed December 21, 1911.*

1. DRAINAGE—*right of land owners to join in objections to an application for judgment and order of sale.* On an application for judgment and order of sale for a delinquent drainage assessment it is proper for the land owners to join in such objections as apply to all the lands, and unless it ·is apparent from the objections themselves, when considered in connection with the application, that confusion or embarrassment will result from permitting objectors to join, the objections should not be stricken from the files.

2. SAME—*a fraudulent change of classification renders assessment invalid.* A fraudulent change by the commissioners in the classification after it has been finally determined upon and before the assessment is made renders the assessment on the classification so fraudulently changed invalid, and the objection may be urged by the land owners jointly, on application for judgment and order of sale for the delinquent assessment. (*Leonard* v. *Arnold,* 244 Ill. 429, distinguished.)

3. SAME—*objection that assessments are in excess of benefits may be made on application for judgment.* Since the Farm Drainage act was amended, in 1901, by striking out section 27, the land owners have no opportunity to be heard with reference to the assessment until application is made for judgment and order of sale, and it is therefore proper, on such application, to raise the objection that the assessments are in excess of benefits, and as such objection affects each tract of land, even though not in the same proportion, the land owners may join in the objection, and upon the hearing the court should hear the proof on the question of benefits and sustain the objection as to any excess of the assessment above the benefits.

4. SAME—*commissioners must find that amount levied is necessary.* Before the farm drainage commissioners are authorized, under section 26 of the Farm Drainage act, to make out an assessment roll or tax list they must provide for the amount of the assessment by a resolution stating that the amount named is necessary; and a failure of the commissioners to find that the amount levied is necessary to be raised by special assessment is a valid objection on application by the collector for judgment of sale.

5. SAME—*what may be shown under an objection that land has never been legally included in district.* Under an objection that

none of the lands of the objectors in a certain county had ever been legally included within the district, which was organized in another county, the objectors cannot attack the corporate existence of the district, but they may show, if they can, such facts as will show a lack of jurisdiction in the drainage commissioners to levy any tax against the lands.

6. SAME—*what action by commissioners does not have any effect upon the classification.* Section 21 of the Farm Drainage act authorizes the commissioners, under certain conditions, to make a new classification, but the determination to make a new classification must be arrived at in a regular meeting of the commissioners and a record of it made and preserved; and any written statement by the commissioners, or a majority of them, that the classification made is not in accordance with justice and right does not affect the classification or the assessment.

7. SAME—*the fact that those paying assessment admitted that classification was unjust cannot be proved.* Land owners have a right to be heard as to the final adoption of the classification, but when the classification is once adopted it can be changed only by the commissioners in the manner pointed out by the statute; and the mere fact that the persons, or a majority of them, who paid the assessment without objection admitted that the classification was not in accordance with justice and right cannot be made the basis of an objection to the application for judgment.

8. SAME—*objection that district has been absorbed can only be made in a direct proceeding.* An objection that the drainage district has been absorbed by another district cannot be urged upon application for judgment and order of sale for a delinquent drainage assessment, as such objection goes to the corporate existence of the district and can only be made in a direct proceeding.

9. SAME—*objection that proposed ditch does not have an adequate outlet is not valid.* Land owners have a remedy, by *mandamus,* to compel drainage commissioners to provide outlets of ample capacity for the waters of the district, and hence an objection that the ditch has no adequate outlet is not a valid one to urge on application for judgment and order of sale.

10. SAME—*Farm Drainage act does not provide for confirmation of assessment.* An objection that a farm drainage assessment was never confirmed is not valid, as the Farm Drainage act does not provide for such confirmation, and if it is intended by such objection to raise the point that the assessment roll was not filed with the town clerk, as provided by the act, the objection should state that fact specifically.

11. SAME—*fact that delinquent list does not provide for collection of interest is not a valid objection.* The fact that the county collector may not have included interest on the delinquent assessment does not furnish the land owners with a valid objection to the application for judgment and order of sale.

APPEAL from the County Court of Lee county; the Hon. ROBERT M. SCOTT, Judge, presiding.

CARL E. SHELDON, for appellants.

HARRY EDWARDS, JOHN E. ERWIN, and FRANK J. BOWMAN, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The county collector of Lee county made application to the county court for judgment and sale of the lands of appellants for the delinquent taxes assessed by Drainage District No. 3 of the town of Montmorency, in Whiteside county. Appellants jointly filed nineteen objections, which, upon motion of the People, were stricken from the files. Judgment was entered as applied for, and from that judgment this appeal was perfected.

The objections filed by appellants were: (1) That the classification was fraudulently changed after it had been decided upon by the commissioners; (2) that after the classification had been made two of the commissioners "signed a paper" that it was not in accordance with justice and right; (3) that the objectors represent five-sixths of the assessment, and of the five land owners not objecting four had signed a statement that the classification was not in accordance with justice and right; (4) that said Drainage District No. 3 had been absorbed by another district; (5 and 6) that the assessments were in excess of the benefits; (7) that the assessment is greatly in excess of the amount required and that the record of the commissioners does not show that such amount of money is necessary;

(8 and 9) that no itemized statement of the cost of the work and no plans for the proposed work have been filed with the town clerk; (10) that the plans do not provide for the building of bridges in enclosed fields; (11) that the assessment is against persons instead of against lands; (12) that the proposed ditch does not have an adequate outlet; (13) that two of the drainage commissioners, after the assessment was made, signed a statement that the proposed improvement is for a larger ditch than is necessary; (14) that the delinquent list does not show that the assessment is past due; (15) that the assessment was never confirmed; (16) that the delinquent list does not provide for the collection of interest; (17) that the right of way for the ditch has been assessed against the parties owning the lands through which it passes; (18) that the commissioners did not obtain jurisdiction over all the parties owning lands at the time the classification was made; and (19) that none of the lands in Lee county have been legally included within the district.

The principal contention of the appellee in support of the action of the court in sustaining the motion to strike the objections is, that the several land owners did not have the right to join in making the objections, for the reason that their interests are not identical and that they have no joint interest in the lands sought to be sold. It appears from the application for judgment and sale that the objectors owned separate tracts of land. They all joined in the objections, and under the holding in *People* v. *Keener,* 194 Ill. 16, this was a proper method of procedure, provided all the objections made applied to the lands of each of the objectors. In that case, in passing upon the question whether, in such a proceeding as this, different owners may properly join in the objections, we said: "Where the objections are identical, and in the absence of anything to show that confusion or embarrassment will be produced by their being permitted to do so, we see no substantial

reason for holding that they may not so join. To hold otherwise would often, in effect, produce a multiplicity of suits and cause delay and unnecessary expense without corresponding benefits." Unless it should be apparent from the objections themselves, when considered in connection with the application, that confusion or embarrassment would be produced by permitting the objectors to join, the court would not be warranted in sustaining a motion to strike them upon that ground.

The court erred in sustaining the motion to strike as to objections 1, 5, 6, 7 and 19. Objection 1 was based upon the charge that after the commissioners had agreed upon a classification it had been so fraudulently changed that it was not in accordance with that decided upon or with what the commissioners had determined to be in accordance with justice and right. Drainage District No. 3 was organized under the statute commonly known as the Farm Drainage act. This act provides, in detail, how the classification of the lands in a district shall be made, requires the commissioners to give notice to all the owners of lands in the district of a meeting at which objections made to the classification may be heard, and provides if the commissioners are satisfied that any injustice has been done in the classification they shall then correct the same in accordance with what is right, but if not so satisfied, that the classification shall be left as first made and an order entered by the commissioners to that effect. From this final determination of the commissioners on the classification of the lands any person who has appeared and objected to the classification may appeal to the county court, and upon such appeal the classification as made by the commissioners shall be reviewed by a jury, who shall have the power to correct or confirm the classification, as in their judgment the evidence shall warrant. If, after a classification has been finally made and determined upon and before any assessment has been made in accordance with it, changes

are fraudulently made in the classification, an assessment attempted to be made upon such classification so fraudulently changed is not valid, and this question may be raised by objection to the tax. It is apparent that any change in the classification must in some degree affect every land owner in the district. Appellee relies upon the case of *Leonard* v. *Arnold,* 244 Ill. 429, in support of the contention that objection 1 was properly stricken. But in that case it was complained that in the making of the classification the commissioners fraudulently classified their own lands lower than they should have been, and it was held that the charges of fraud merely went to the motive of the commissioners, and was equivalent to the charge that they had made an improper classification from mistake or want of judgment. The objection here is not based upon the ground that the commissioners committed any fraud in making the classification, but that after the same had been made and decided upon it was fraudulently changed.

Objections 5 and 6 are the same. Under these objections proof should have been admitted. Under the constitutional provision relating to drainage, a special assessment can only be made on property benefited by the proposed improvement, and in no case may the assessment exceed the benefits to be derived from the proposed improvement. (*Havana Township Drainage District* v. *Kelsey,* 120 Ill. 482.) Special assessments are levied by virtue of section 26 of the Farm Drainage act. The act formerly contained a section 27, which provided for an appeal to the county court from any special assessment levied under section 26, but the act was amended in 1901 by striking out section 27, since which time the property owner has no opportunity to be heard on any matter in reference to the special assessment until application has been made for judgment and sale of his lands for delinquent taxes. (*People* v. *Carr,* 231 Ill. 502.) As the objectors had the right to insist that the total assessments against their lands for the

cost of the proposed improvement should not exceed the benefits, and as this was the first opportunity afforded them to be heard upon that question, the court erred in striking objections 5 and 6.

The only argument made on behalf of appellee in support of this action of the court is, that the interests of appellants are not identical under these two objections, and it is urged that as each tract of land is necessarily in a class by itself, on account of its location, soil, contour, etc., the determination of the question of benefits on joint objections would lead to confusion and embarrassment. A determination whether the assessment exceeded the benefits would not involve a consideration of the different characteristics of the various tracts of land in the district. Those matters were considered and adjusted when the classification was made, and if a classification is properly made each tract of land will bear its proportionate share of the burden of all future assessments. Should an assessment be made in excess of the benefits under a proper classification, each tract of land in the district would be affected at the same time, although, it is true, not in the same proportion. Assuming that the classification is correct, a reduction of the assessment to a point where it would equal the benefits to any particular tract of land would be a reduction to a point that would equal the benefits to every other tract of land in the district. This was such an objection as the various land owners might properly join in making, and upon the hearing the court should hear the proof on the question of benefits and should sustain the objection as to any excess of the assessment above the benefits.

Section 26 of the Farm Drainage act provides that the commissioners, by resolution, shall order such amount of money to be raised by special assessment upon the lands of the district as may be necessary; that they shall then make out a special assessment roll or tax list, and when com-

pleted the list shall be filed with the town clerk. Section 2 of the act provides that the town clerk shall be the clerk of the drainage commissioners and shall be the custodian of all papers and records pertaining to drainage matters, and shall keep in a well-bound book, to be known as the "Drainage Record," a record of the proceedings of the commissioners, and shall enter at length therein all the orders and findings of the commissioners pertaining to the subject of drainage. Before the commissioners are authorized, under section 26, to make out an assessment roll or tax list, they are required to provide for the amount of the assessment by resolution, and this resolution must state that the amount named is necessary. Before they are warranted in making any assessment roll the statute must be strictly complied with. (*People* v. *Carr, supra; People* v. *Warren,* 231 Ill. 518.) That the commissioners failed to find that the amount levied was necessary to be raised by special assessment is a valid objection to the collection of the tax, and objectors should have been allowed to make proof under objection 7.

Objection 19 was, that none of the land in Lee county had ever been legally included within the district. While this objection is very general in its terms and should have been more specific, it is one under which legitimate proof might be made. Appellee relies chiefly upon *People* v. *Dyer,* 205 Ill. 575, and *Shanley* v. *People,* 225 id. 579, to support the action of the court in striking this objection. Appellants do not have the right, under this objection, to attack the corporate existence of the district, for, as was said in the *Dyer case, supra,* and the *Shanley case, supra,* if they desire to raise such question it must be done by *quo warranto.* In a proceeding to collect a special assessment levied by a drainage district the organization of the district cannot be questioned collaterally, but it can only be done in a direct proceeding. It does not appear from this record how the lands of objectors, being located in Lee

county, became attached to district No. 3 of the town of Montmorency, in Whiteside county. The record is silent as to whether these lands were included at the time of the organization of the district or were subsequently claimed to be annexed under one of the various methods provided by the Farm Drainage act. But no matter under what method it might be claimed these lands became a part of said district No. 3, appellants, under this objection, would have the right, if they could, to show that no record had ever been made including their lands within the district, if they had not been included originally, or, in any event, whether they had been included originally or annexed subsequently to the organization of the district, that they had never been given the required notice of the meeting to hear objections to the classification made by the commissioners. Such proof would show a lack of jurisdiction in the drainage commissioners to levy any tax against the lands of appellants, and as we said in *Payson* v. *People,* 175 Ill. 267, in passing upon the question whether this could be raised in a collateral proceeding: "The statute required that notice should be given the plaintiff before a right existed to levy the special assessment against his land. Only after due notice to him, as required by the statute, can his land be brought into the district and made subject to the special assessment. To hold that a land owner may be subjected to such an assessment without any notice given or attempted, and without an appearance, would be against every principle of justice and right. The right to levy a tax by which one may be deprived of his property exists by virtue of the statute alone, which must be strictly followed." And it was there held that such an objection was not a denial of the existence of the corporation. As this objection applied to all the lands of appellants it was one in which they could properly join.

All the remaining objections were properly stricken. Objections 2 and 13 simply state that after the assessment

was made two of the commissioners "signed a paper" that the classification was not in accordance with justice and right and that the proposed improvement was for a larger ditch than was necessary.  By section 21 of the act provision is made whereby the commissioners may make a new classification in accordance with justice and right when they believe, from experience and results, that the former classification was not fairly adjusted on the several tracts of land according to benefits.  This determination must be arrived at in a regular meeting of the commissioners and a record of it made and preserved.  Having once arrived at this determination in this manner, it is then incumbent upon the commissioners to make a new classification.  A classification, unless regularly made, cannot be changed or affected except in the method provided in the act.  Any written statement made by the commissioners, or a majority of them, in any other method than that provided by the statute, would have no effect whatever upon the classification or on any assessment levied thereafter.

Objection 3, that a majority of those who had paid the assessment signed a statement that the classification was not in accordance with justice and right, would not admit of proof.  The land owners had the right to be heard as to the final adoption of the classification, and when once adopted it could only be changed by the commissioners in the method pointed out by the statute.

Objection 4 states that Drainage District No. 3, after its organization, had become absorbed by another district and thereby lost its corporate identity.  This is an attack upon the corporate existence of the district and can only be made in a direct proceeding.  *People* v. *Dyer, supra; Shanley* v. *People, supra.*

Objections 8 and 9 pertain to matters which could have been raised at the time of the hearing of objections to the classification.

Objections 10, 17 and 18 do not disclose that any of appellants would in anywise be affected should they be able to prove the matters therein charged. It does not appear that there is any necessity for any bridges over ditches of any of the lands of the appellants, or that any ditches for which it was necessary to condemn the right of way extended over lands of appellants or any of them. Nor is it pointed out in objection 18 over which of the parties the commissioners failed to obtain jurisdiction.

The assessment is made in the form provided by the statute, and shows on its face that it is not subject to objection 11.

Objection 12 does not state a proper ground of objection to the tax. The provisions of the Farm Drainage act which require drainage commissioners to provide outlets of ample capacity for the waters of the district are mandatory, and the commissioners may be compelled by *mandamus,* in a proper case, to perform their duty in that respect. (*Peotone Drainage District* v. *Adams,* 163 Ill. 428; *Langan* v. *Drainage District,* 239 id. 430.) The fact that the drainage commissioners may have failed to provide an adequate outlet for the system of drainage should not operate to defeat the whole purpose of the organization of the district. If it be the case that the outlet is inadequate, the appellants have their remedy and may compel the commissioners to provide one which will be adequate.

Objection 14 is answered by the record itself. The certificate of the county collector that the assessments are delinquent shows them to be past due, and there is no need of any further statement of that fact.

As to objection 15, it is only necessary to state that the Farm Drainage act does not provide for the confirmation of an assessment. It might be contended that the assessment is confirmed when it is made by the commissioners and the assessment roll is filed with the town clerk, as provided by the act, and that this objection was intended to

mean that there is no proper record showing the making of the assessment and the filing of the assessment roll. If that is the basis of the objection those facts should have been specifically stated.

By objection 16 appellants seek to show that the delinquent list does not provide for the collection of any interest on the assessments. Section 29 of the act provides that such taxes shall draw interest at the rate of six per cent from the time that they become due until they are paid, and that such interest may be collected as part of the taxes. If the county collector has not seen fit to require the payment of the interest due on the delinquent tax that action could only result beneficially to appellants and does not afford them any grounds for an objection to the collection of the tax.

The judgment of the county court is reversed and the cause remanded.          *Reversed and remanded.*