D. P. WRIGHT ET AL. *v.* B. T. PHELPS ET AL.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 15, 1915.

*Municipal Corporations—Legal Existence—Collateral Attack— Recognition by State—"Color of Law"—De Facto Municipal Corporations.*

The legal existence of a municipal corporation that was organized and is acting under color of law, and with the acquiescence of the State, cannot be collaterally attacked, as in a suit to restrain the collection of taxes; and "color of law" does not in that connection mean actual law, but only the semblance of legal right.

Until the State institutes proceedings by which a municipal corpora-
tion, organized under color of law, is suppressed, it exists *de facto*,
and the public functions with which it is charged, within the scope
of its apparent powers, may be lawfully performed by its officials
as *de facto* officers.

APPEAL IN CHANCERY, Windham County. Heard at Cham-
bers, March 16, 1914, on the pleadings and a master's report,
*Miles,* Chancellor. Decree that the bill be dismissed, with costs
to the defendants. The orators appealed. The opinion states
the case.

*A. F. Schwenk, Clarke C. Fitts* and *Hale K. Darling* for the
orators.

*W. D. Smith, E. W. Gibson* and *John G. Sargent* for the
defendants.

WATSON, J. The bill in this case is brought for the purpose
of enjoining the collection of certain taxes voted and assessed by
the village of Westminster, and of annulling and declaring void
the action of selectmen of the town of Westminster in attempt-
ing to establish the village, under provisions of the general
statute, reading as follows:—

"Selectmen shall, upon a petition of a majority of the voters
in town meeting residing in a village containing thirty or more
houses, establish the bounds of such village and cause a descrip-
tion thereof, by its name and bounds, to be recorded in the town
clerk's office and posted in two or more public places in such
village; and the residents of such village shall thereupon become
a body politic and corporate with the powers incident to a public
corporation, and be known by the name expressed in such descrip-
tion, and by that name may sue and be sued, and hold and convey
real and personal estate for the use of the corporation." V. S.
3121, P. S. 3577.

In January, 1907, a petition, signed by seventy of the legal
voters in the town of Westminster residing in the village, was
presented to the selectmen, requesting them to establish the
bounds of said village in accordance with the foregoing provi-
sions of the statute. Before the matter was acted upon by the
selectmen, a remonstrance, signed by thirty-two of the voters

who had signed the petition, and some others, was presented to the selectmen, requesting that their names be struck from the petition and not counted in favor of incorporating the village, as they did not wish to have it incorporated.   Later and on the 12th day of February, 1907, the selectmen met, examined the check list and the grand list, and found that by deducting from the petition, the names of the thirty-two voters who had signed the remonstrance, the names of less than a majority of the voters residing in the village remained upon the petition; whereupon, the petition and the remonstrance were left in the town clerk's office.   Some time in the following month, the same men having been reelected selectmen of the town, a paper signed by seventeen of the voters who had previously signed both the petition and the remonstrance, was presented to the selectmen, requesting them to count and consider "our names as only upon the petition first signed by us * * * asking for said incorporation."

The master states that on the 6th day of April, 1907, the selectmen met pursuant to notice given by the chairman, and considered the matter; that by taking the names upon the paper last mentioned "from the remonstrance and treating them upon the petition, it was found that a majority of the voters in Westminster residing in the village appeared upon the petition." Thereupon the selectmen established the bounds of the village of Westminster, and caused a description thereof, by its name and bounds, to be recorded in the town clerk's office, on the 8th day of the same month.   The document signed by the selectmen and so recorded states:   "Whereas a petition has been presented to us, * * * duly signed by a majority of the voters in town meeting residing in the village of Westminster, * * * containing more than thirty houses, to establish the bounds of such village.   Now by virtue of the law in such case made and provided we do define and fix the following boundaries of the village of Westminster, to wit:" then follow the boundaries.

Following that, at a meeting of the voters of the village warned for that purpose, certain proceedings were had for the establishment of the village and for the organization of the government thereof; corporate officers were elected.   On the 29th day of June, 1907, at a meeting of the voters of the village, held pursuant to a warning therefor, the tax in question was voted for the purpose of defraying the expense of lighting the streets, (for which a vote was had at the same meeting,) and any

incidental expenses of the village, to be collected and paid into the treasury on or before the first day of February, 1908, ninety days' notice to be given to the taxpayers to pay the same.

The orators base their claim for relief upon four grounds, all of which challenge the legality of the corporate existence of the village. A full statement of the grounds is unnecessary; for we think the case is governed by the general rule, that the State, being the creator of municipal corporations, is the proper party to impeach the validity of their creation; and that if the State acquiesces in the validity of a municipal corporation, its corporate existence can not be collaterally attacked. This is stated as the general rule, in *Shapleigh* v. *San Angelo*, 167 U. S. 646, 42 L. ed. 310, 17 Sup. Ct. 957, and it is stated and applied in *Readsboro* v. *Woodford*, 76 Vt. 376, 57 Atl. 962. Mr. Cooley says: "In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the State as such. Such a question should be raised by the State itself, by *quo warranto* or other direct proceeding." Cooley's Const. Lim. 309.

" 'Color of law' does not mean actual law. 'Color' as a modifier, in legal parlance, means 'appearance as distinguished from reality.' 'Color of law' means 'mere semblance of legal right.' " *State* v. *Des Moines*, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381; *McCain* v. *Des Moines*, 174 U. S. 168, 43 L. ed. 936, 19 Sup. Ct. 644.

The general rule stated above is supported by the overwhelming weight of authority. Some of the cases are the following: *Rellstab* v. *Belmar*, 58 N. J. L. 489, 34 Atl. 885; *Lang* v. *Bayonne*, 74 N. J. L. 455, 68 Atl. 90, 15 L. R. A. (N. S.) 93, 122 Am. St. Rep. 391, 12 Ann. Cas. 961; *Coe* v. *Gregory*, 53 Mich. 19, 18 N. W. 541; *Nunda* v. *Crystal Lake*, 79 Ill. 314; *People* v. *Pederson*, 220 Ill. 554, 77 N. E. 251; *People* v. *Bowman*, 247 Ill. 276, 93 N. E. 244; *People* v. *Welch*, 252 Ill. 167, 96 N. E. 991; *Black* v. *Early*, 208 Mo. 281, 106 S. W. 1014; *Keech* v. *Joplin*, 157 Cal. 1, 106 Pac. 222; *Constitution* v. *Chestnut Hill Cemetery Asso.*, 136 Ga. 778, 71 S. E. 1037; *Topeka* v. *Dwyer*, 70 Kan. 244, 78 Pac. 417, 3 Ann. Cas. 239; *School District* v. *Fremont County*, 15 Wyo. 73, 86 Pac. 24, 11 Ann. Cas. 1058; *People* v. *Ellis*, 253 Ill. 369, 97 N. E. 697, Ann. Cas. 1913 A, 592. And the courts go so far as to hold, that so long as the State does

not see fit to interfere and terminate the existence thereof by direct proceeding, a municipal corporation which has been created under the provisions of an unconstitutional statute may exercise upon the citizen, through its officers, the powers conferred upon it by statute, as fully and completely as if it was created by a law valid in every particular. The reason is, that until the State institutes proceedings by which the organized municipal government "is overturned and suppressed, it is *de facto,* and the public functions with which it is charged, within the scope of its apparent powers, may be lawfully exercised by its officials as *de facto* officers." *Att'y-Gen.* v. *Dover,* 62 N. J. L. 138, 41 Atl. 98; *Coast Co.* v. *Spring Lake,* 56 N. J. Eq. 615, 36 Atl. 21; *Lang* v. *Bayonne,* cited above; *St. Louis* v. *Shields,* 62 Mo. 247; *Ashley* v. *Presque Isle County,* 60 Fed. 55, 8 C. C. A. 455; *Miller* v. *Perris Irrigation Dist.,* (C. C.) 85 Fed. 693; *Topeka* v. *Dwyer,* cited above. See also *In re Powers' Estate,* 65 Vt. 399, 26 Atl. 640.

From the facts stated and the law, there can be no doubt that the village of Westminster was acting under color of law at the time the tax in question was voted and assessed. And not only was the corporation always recognized by the State, (no steps being taken in behalf of the State to impeach its validity,) but it was expressly recognized in Laws of 1912, No. 334, §16, as established under the provisions of the Public Statutes, by order of the selectmen filed in the town clerk's office on April 8, 1907; by which section that village was abolished, except for the purpose of winding up its affairs, the collection of back taxes. and the payment of its debts.

We hold therefore that in dismissing the bill with costs to the defendants, there was no error.

*Pro forma decree affirmed and cause remanded.*