## CLAUS v. CITY OF FAIRBANKS et al.

### No. 6684.

United States District Court, Alaska Fourth Div. Fairbanks.

Feb. 14, 1951.

Ralph J. Rivers, Fairbanks, Alaska, for plaintiff.

Julien A. Hurley, Fairbanks, Alaska, for defendants.

PRATT, District Judge.

Section 2381, Compiled Laws of Alaska 1933, stated that the city council should appoint city officials. It mentions a number of them but does not mention a utility board.

Chapter 48, Session Laws of Alaska 1935, amends section 2381, supra (though fails to state that it was "amended to read as follows") by adding a proviso to the effect that the city council of a city which operates public utilities has the power to create, by ordinance, a utility board for the management of public utilities, the council to define its powers and duties and the board to formulate and enforce the general rules and policies and such board to be elected at the next general or special election.

Chapter 75, Session Laws of Alaska 1939 amends Chapter 48, SLA 1935 by dropping the proviso with reference to the appointment of a utility board.

Chapter 47, SLA 1941, likewise amends section 2381 as amended by Chapter 75, SLA 1939 and again drops out the proviso about the appointment of the utility board.

Section 2383, Compiled Laws of Alaska 1933, as amended by Chapter 48, Session Laws of 1935 provides that the expenses of the utility must be paid out of revenue from the utility and not from taxation.

From 1939 until 1949, there was no law in force in Alaska authorizing the creation of a utility board. Nevertheless, on the 10th day of November 1947, the city council of the City of Fairbanks passed and approved ordinance number 409 which created a utility board to operate the utilities owned and to be acquired by the City of Fairbanks, to wit: plants for the production and sale of steam heat, water, electricity and telephone service.

On the 7th day of August, 1950, the alleged utility board passed resolution number 10 in which it set forth the rates to be charged for the various utilities. Steam heat was to be sold by meter reading in some instances and in others, unmetered steam was to be "2 times the charge made by the Northern Commercial Company immediately prior to August 1, 1950, to each respective customer for the corresponding month for the corresponding service". The Northern Commercial Company mentioned in said resolution had supplied utilities to the City of Fairbanks for a great many years prior to August 1, 1950.

The plaintiff, who owns 2 separate stores in the City of Fairbanks, paid his August and September 1950 bills for unmetered steam but paid them under protest. Later, he tendered payment of one-half of the rate established by the utility board for unmetered steam and agreed to pay more if a larger rate was found to be reasonable in a promised survey of the question. He also demanded a meter, all of which were refused.

The plaintiff, by the 5th of January 1951, had paid for all of his utilities except unmetered steam. By letters of January 5, 1951, the comptroller of the utility system informed him that if he did not pay his current balance due by the 10th of January 1951, all utilities, not merely the unmetered steam, would be discontinued to him.

Plaintiff brought this action to restrain the utility board from discontinuing its service of utilities to him pending final decree in this case and decreeing that the action of the alleged utility board as to unmetered steam rates was illegal, discriminatory, lacking in uniformity and that such discontinuance of service would irreparably injure plaintiff by freezing and loss of business.

House bill number 117 of the 1949 Alaska Legislature became Chapter 92, Session Laws of Alaska 1949 and again provided for the creation of a utility board. Chapter 126, SLA 1949, approved with an emergency clause March 26, 1949, amended Chapter 92, SLA 1949 as a validating act in the following words: "This section constitutes a re-enactment of statutory authorization for establishment of municipal utility boards under the provisions of Ch. 48 S.L.A. 1935, under which such boards have existed and operated ever since that time, even though said provisions were inadvertently repealed by Ch. 75 S.L.A. 1939, in connection with which the de facto status of such boards during all of said period is hereby recognized, and all actions heretofore taken by said boards in conformity with the provi-

926

sions of said Ch. 48 S.L.A. 1935 are hereby validated and confirmed."

Although it is rather unusual that the legislature in 1949 should assert that a legislature 10 years before and again in 1941 had inadvertently repealed the portion of Chapter 48, SLA 1935 authorizing the creation of a utility board, the matter requires further attention.

■ "Laws are presumed to have been passed with deliberation and with full knowledge of all existing ones on the same subject * * *". State ex rel. Stearns County v. Klasen, 123 Minn. 382, 143 N.W. 984, 985, 49 L.R.A.,N.S., 597.

■ "The legislature is presumed to legislate with knowledge of former related statutes * * *". Continental Insurance Co. v. Simpson, 4 Cir., 8 F.2d 439, 442. To the same effect see The Penza, 2 Cir., 9 F. 2d 527–528.

■ In volume 1, McQuillin on Municipal Corporations, (3rd Ed.), it is stated:

Page 583, section 3.45, "In other words, an attempt to create a municipal corporation may create (1) a de jure corporation, (2) a de facto corporation, or (3) an organization which is neither a de jure corporation nor a de facto corporation. In case of de facto corporations, they are not subject to attack ordinarily except by direct proceedings brought by the state. In case of corporations where there is not even a de facto municipal corporation, the attempted creation is void and not only subject to direct attack either by the state or private persons, subject to certain exceptions, but also subject to collateral attack in any proceedings."

■ Page 587, section 3.48, "A de facto corporation has been defined as one so defectively created as not to be a de jure corporation, but nevertheless the result of a bona fide attempt to incorporate under existing statutory authority, coupled with the exercise of corporate powers, and recognized by the courts as such on the ground of public policy in all proceedings except a direct attack by the state questioning its corporate existence."

■ Page 588, "The general rule is that, in order to be a de facto municipal corporation there must be (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempted compliance in good faith with the requirements of the statute as to incorporation; (3) a colorable compliance with the statutory requirements; and (4) an assumption of corporate powers."

■ Page 589, "If there was a material omission or fatal irregularity in the proceeding for the incorporation of a municipal corporation, a purported decree of incorporation is void and does not create a de facto corporation."

"Some courts hold that where there cannot lawfully be a corporation de jure there cannot be one de facto. Municipal governments, these courts say, are creatures of the law, and the warrant of their creation, apart from constitutional provisions, must be found in a valid legislative act, or they can have no legal existence. Accordingly the broad doctrine is declared that there can be no de facto corporation where there is no law authorizing a de jure corporation."

Page 595, section 3.50, "If there is neither a corporation de jure nor one de facto, it is generally held that an attempted exercise of corporate powers may be attacked by a private individual who will be affected thereby, in an appropriate proceeding. Where a purported municipal corporation is neither a corporation de jure nor de facto, but instead a nullity, it may be attacked collaterally, or directly * * *".

From the above it appears clear that when the legislature in 1939 amended Chapter 48, SLA 1935 by dropping out the proviso as to the creation of utility boards, there was no basis for a de facto corporation and therefore no basis for a curative act of an alleged utility board, until Chapter 92, SLA 1949 again authorized the creation of a utility board. Consequently if Chapter 126, SLA 1949 is urged as validating the creation of the Fairbanks Utility Board by the ordinance of 1947, it is invalid as not being based upon or authorized by

any law and therefore incapable of being validated.

However, the wording of Chapter 126, SLA 1949 is merely that if a utility board was created during the time Chapter 48, SLA 1935 was in full force and effect, the actions of such board, even if done after the repeal of Chapter 48, SLA 1935, were within the de facto status and validated. It does not attempt to state that a utility board attempted to be created in 1947 could be considered a de facto board.

The result is that the Fairbanks Utility Board attempted to be created in 1947 was not a valid organization and was not a de facto organization and none of its actions, except where based upon estoppel or valid contract, could be validated by the 1949 legislature even if it had attempted such validation.

Consequently, the rate established in resolution number 10 for unmetered steam was and is invalid and the plaintiff is not liable therefor, except for the reasonable value of such steam.

Ordinance number 429 passed upon the 11th day of October 1948 had to do entirely with the request of the Northern Commercial Company, holder of the utilities franchises within the Town of Fairbanks, Alaska, for a raise in rates effective October 1, 1948. In said ordinance, the council granted a raise for unmetered steam as follows: (a) for the first floor of all buildings $.036 per cubic foot of space to be heated (b) for the second and third floor of all buildings $.024 per cubic foot of space to be heated. It is not thought that this ordinance constitutes any fixing of the rate to be charged by the municipal utilities although it may be of certain evidentiary value in ascertaining the present reasonable value of unmetered steam.

Ordinance number 459 passed and approved October 3, 1949 provided for the issuance of $4,000,000 interest bearing municipal utilities revenue bonds of the City of Fairbanks, Alaska secured by and payable solely out of the revenues, income, receipts and profits of the utility system therein provided. Said ordinance further provided: for an additional issue of $500,000 general obligation interest bearing bonds of the City of Fairbanks for the purpose of financing part of the purchase of the Northern Commercial Company plant and other plants and improvements and for the construction and enlargement of said public utilities and the payment of utility obligations; that all income from the utilities and the sale of bonds shall be delivered to a trustee who shall deposit the same in a special deposit to be used for bettering said utility system and paying liabilities incurred in acquiring, operating, repairing, etc. The holders of bonds are given a lien upon the special funds. The bonds are to be redeemed by January 1, 1975 and the city is given a monopoly of public utilities within its limits.

Section 7 provides that the city will institute schedules of rates recommended by the consulting engineer for the project, which rates are set forth in the rate schedule attached as exhibit A.

It further provides that if at any time the revenues of the system are not sufficient for the purpose of making the payments required, the city will request the consulting engineer for the system to make his recommendations as to a revision of rates so that any deficiency may be made up before the end of the next ensuing fiscal year.

Attached to ordinance number 459 is the schedule of rates prepared by the consulting engineer of the system. It provides for a metered charge for steam heat but makes no provision whatsoever for a rate for unmetered steam heat. Therefore it is the duty of the city to request the consulting engineer for the system to make his recommendation as to the rates and charges with reference to unmetered steam heat and it would then be the duty of the city to follow such recommendation.

Section 7 of ordinance 459 also provides, "The city covenants that it will discontinue any of the services or facilities furnished by the system to a customer upon non-payment of rates and charges, by the customer receiving such services or facilities".

It is believed that the quoted paragraph of section 7 just mentioned gives the city a right to discontinue service of any

utility upon which the charge has not been paid but it does not give the city the right to discontinue service of facilities whereof the charge has been paid even though in some other service the rate is not paid. In other words, failure to pay for a particular utility does not warrant the city in refusing to sell other utilities whereon full payment has been made. This is based upon the wording of said section 7 and is not meant to infer that the city cannot, under a proper ordinance, provide that failure to pay for one utility shall authorize a refusal to furnish any other utility.

Said ordinance 459, which constitutes a contract between the city and the bondholders, binds the city council itself to fix the rates recommended by the consulting engineer during the construction period which has not yet ended. It does not give any utility board such a right. It expressly repeals all ordinances in conflict therewith.

It is believed that the city council is bound to fix such rates upon such recommendations and that lacking such fixing of rates, the users of unmetered steam heat are liable only to pay the reasonable value thereof.

### Is There an Adequate Remedy At Law for the Plaintiff?

Section 56–2–4, Alaska Compiled Laws Annotated 1949 provides that if a judgment for money is given against a municipal corporation No Execution Shall Issue but a transcript of the judgment shall be presented to the person authorized to draw orders upon the treasurer of the municipality and he shall draw such an order. Upon presentation of the order, the treasurer shall pay the same in like manner as other orders are paid. In other words, they are paid whenever the city has enough on hand to want to pay such bills.

If the plaintiff paid the invalid rate for unmetered steam and brought an action at law to recover the portion of such payment which was over and above the reasonable value of unmetered steam, he, the plaintiff, could not force the city to make the payment promptly. He could not issue an execution as is the usual right and remedy of any one with a judgment against another person or ordinary corporation.

Ordinance number 459 shows that the City of Fairbanks has a debt of $4,500,000 for a newly acquired utility system, the income from which is to be turned over to a trustee and deposited in special funds and not available for the payment of any claim for over-payment for the steam utility.

It seems quite clear there is no remedy at law which is adequate to the situation and that the present action is justified.

Upon the plaintiff filing herein a bond in the sum of $1,000 executed by plaintiff and two sufficient sureties duly approved and conditioned for the payment of any costs and damages that may be incurred and suffered by any party defendant if said injunction is found to have been wrongfully issued, the plaintiff will be entitled to an injunction pendente lite restraining the defendants from cutting off service of the utilities of the Town of Fairbanks to plaintiff's stores until final judgment herein.

An order consistent with the foregoing opinion may be presented by the attorney for the plaintiff.