SARAH ROTHKOPF ET AL. *v.* CITY OF DANBURY ET AL.

ALCORN, HOUSE, COTTER, THIM and COVELLO, Js.

Argued March 5—decided April 16, 1968

*Harry Cohen,* for the plaintiffs.

*Louis A. DeFabritis,* with whom was *Daniel T. Eberhard,* for the defendants.

*Richard L. Nahley,* corporation counsel, for the defendants Arconti et al.

House, J. This complaint in four counts was brought by three plaintiffs who challenge the legality of the government of the city of Danbury, claiming that the procedure by which the former town and city of Danbury were consolidated was unconstitutional and illegal. Specifically, they seek a declaratory judgment determining the constitutionality of §§ 7-195 through 7-201 of the General Stat-

utes, commonly known as the Home Rule Act, and the constitutionality and legality of a consolidation ordinance enacted pursuant to that act consolidating the governments of the town and city of Danbury. In addition they seek a mandatory injunction directing the defendants to restore the governments of the town and city as they were constituted prior to January 1, 1965, the effective date of the consolidation.

A prior action in which two of the present three plaintiffs joined and which sought essentially the same relief was brought in December, 1963. See A-444 Rec. & Briefs 564. That case was referred to a state referee for a finding of facts, and his report was accepted by the Superior Court, which, however, dismissed the case for lack of jurisdiction upon a determination by the court that the plaintiffs had no standing to maintain a declaratory judgment action to challenge either the constitutionality of the Home Rule Act or the validity of the Danbury consolidation ordinance. Id., back of p. 580. On appeal we found it unnecessary to discuss the validity of the ratio decidendi of the trial court since it was obvious that the defendants were entitled to judgment because it did not appear that all persons having an interest in the subject matter of the complaint had been made parties to the action or had been given reasonable notice of it, and accordingly the plaintiffs had failed to comply with that condition precedent to the bringing of an action for a declaratory judgment. Practice Book § 309 (d); *Wenzel* v. *Danbury*, 152 Conn. 675, 677, 211 A.2d 683.

Following that decision the present action was instituted, and the plaintiffs obtained a court order, pursuant to § 52-105 of the General Statutes, authorizing the plaintiffs to prosecute the action on behalf of all interested persons similarly circumstanced

and the defendants to defend the action for the benefit of all parties who may have an interest in defending against it.

After the pleadings were closed, the parties entered into a stipulation of facts and requested that the court reserve the action for the advice of this court on three questions.[1] The request was granted, and the case is before us on this reservation.

There are several impediments to our consideration of the questions reserved. A trial court or judge cannot confer jurisdiction on this court merely by reserving questions for our advice. *Hoblitzelle* v. *Frechette,* 156 Conn. 253, 255, 240 A.2d 864. Although the stipulation of the parties represents that an answer by this court to those questions "will enable the Superior Court to enter judgment without further proceedings," we note that the defendants filed an answer pleading res judicata, which the plaintiffs denied by their reply. This issue still remains to be determined, and, if it should ultimately be determined in favor of the defendants, an answer to the reserved questions would be unnecessary, and the advice of this court would not enter into a decision of the case. It accordingly appears that the reservation is premature. Practice Book § 738; see *Barr* v. *First Taxing District,* 147 Conn. 221, 223, 158 A.2d 740.

---

[1] "The questions upon which advice is desired are as follows:

"1. Are the Consolidation Provisions of Section 7-187 through Section 7-201 of Chapter 99, Connecticut General Statutes, Revision 1958 and Public Act No. 18, Session of 1963, unconstitutional in whole or in part?

"2. Is the Danbury Consolidation Ordinance unconstitutional or illegal in whole or in part?

"3. Was said Consolidation Ordinance which was placed in effect on January 1, 1965 legally adopted?"

Also, the first two questions are too broadly framed. "Questions in a reservation should be so stated that each will present a definite point of law and the court may give to each a categorical or very definite answer." *Second National Bank* v. *Montesi,* 144 Conn. 311, 315, 130 A.2d 796; *Barnes* v. *New Haven,* 140 Conn. 8, 11, 98 A.2d 523; *Ericson* v. *Childs,* 124 Conn. 66, 82, 198 A. 176. Without reference to any specific constitutional provision or to any specific provision of the statutes or of the consolidation ordinance or to the possible illegal impact of any of them upon any specific right of any of the plaintiffs, the questions seek an opinion as to whether the Home Rule Act and the Danbury consolidation ordinance are generally unconstitutional or illegal "in whole or in part" for any reason whatsoever. There is no suggestion in either of the questions as to which of the many provisions of the constitution are claimed to be applicable or for what reason the consolidated ordinance might be illegal or unconstitutional. "A statute may operate in a manner consistent with constitutional requirements when applied to one set of circumstances, although as to another it may produce a result which makes its operation unconstitutional." *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686; *State* v. *Doe,* 149 Conn. 216, 230, 178 A.2d 271; *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 114 A.2d 535. As framed, the questions seek an answer stating whether for any reason the Home Rule Act and the Danbury consolidation ordinance are void for all purposes. They do not each present a definite point of law to which the court can give a categorical or very definite answer.

We are also confronted by an important jurisdictional question raised by the defendants. It is their

contention that the plaintiffs have no standing to challenge the legal status of a municipality and that the constitutional or legal existence of a Connecticut municipality cannot be attacked by a private person or corporation. The plaintiffs' right to seek a declaratory judgment involves the jurisdiction of the court to entertain the action and may be raised at any time. *Riley* v. *Liquor Control Commission,* 153 Conn. 242, 248, 215 A.2d 402; *McGee* v. *Dunnigan,* 138 Conn. 263, 268, 83 A.2d 491.

The facts contained in the stipulation furnish the factual basis for the jurisdictional claims of the parties. Prior to January 1, 1965, and since its formation by the Court of General Session in 1687, the town of Danbury existed as a municipality. Prior to January 1, 1965, the city of Danbury existed as a municipal corporation specially chartered by the General Assembly and was located within a portion of the territorial limits of the town of Danbury. The legislative bodies of the town and the city, purportedly acting pursuant to chapter 99 of the General Statutes and particularly §§ 7-195 and 7-197, each approved a resolution to consolidate the town and the city, and on October 15, 1962, a consolidation commission was appointed. This commission found it desirable to seek additional statutory authority, and the General Assembly at its 1963 session enacted Public Act No. 18, entitled "An Act concerning Consolidation of Local Units of Government under the Home Rule Act," which was approved and became effective on April 22, 1963. This act is now incorporated into the General Statutes as §§ 7-198 and 7-200 of the General Statutes, revised to 1966.

On August 6, 1963, the consolidation commission approved the text of a proposed consolidation ordi-

nance. On September 24, 1963, a referendum was held in the town and the city on the question of the adoption of the proposed ordinance. A total of 11,127 votes were cast, of which 5608 were recorded as voting "Yes" and 5519 as "No." The results were certified by the town clerk on January 30, 1964, and were filed in the office of the secretary of state on February 3, 1964. The consolidation ordinance as adopted established new offices, departments, boards, commissions, or other agencies and otherwise revised the charter of the city. It has become operative, thereby changing the governmental structures of the town and the city, dissolving the town meeting–board of selectmen form of government and causing the consolidated city of Danbury to exercise its jurisdiction over the territory of the town of Danbury.

The plaintiff Sarah Rothkopf was a resident, taxpayer and elector of both the town and the city of Danbury as each existed prior to January 1, 1965, and now has the same status in the consolidated city. The plaintiff William W. Wenzel was a resident, taxpayer and elector only of the town as it existed prior to consolidation and now has the same status in the consolidated city. The plaintiff Roger L. Ferris was and remains a resident and elector of the town of Redding and owns real estate in Danbury.

The plaintiffs alleged that the consolidation would result in future expenditures from the general fund, increase their taxes, be a waste and diversion of the taxpayers' funds and cause them irreparable damage. Each of these allegations was denied by the defendants. The stipulation of facts is silent as to any effect of the consolidation on taxes payable by Ferris. It discloses that the consolidation results in

a reduction of taxes for some persons, including Mrs. Rothkopf, but that it "will result in expenditures from the general fund and an increase in taxation for certain of said taxpayers such as William Wenzel." An exhibit incorporated in the stipulation indicates that taxes on property owned jointly by Wenzel and his wife increased from $252.12 on the list of 1963 to $336.16 on the list of 1964.

The plaintiffs claim that they have standing to prosecute this action because of their liability to taxation, "in the light of their rights as voters," and "in view of their direct voice in the affairs of town government." In the case of Wenzel, they rely on the authority of such cases as *Bassett* v. *Desmond,* 140 Conn. 426, 432, 101 A.2d 294, where we held that a taxpayer may sue to enjoin the officers of a town from performing illegal acts if their performance would result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury. We stated that his standing would not be "lowered in any degree because the pecuniary effect upon him was extremely small."

There are many Connecticut cases where an individual taxpayer has been permitted to challenge the legality of the actions of municipal officials, notwithstanding recognition of "[t]he danger of allowing taxpayers' suits of this character without limitation." *McGee* v. *Dunnigan,* 138 Conn. 263, 268, 83 A.2d 491; see, for example, *Baker* v. *Norwalk,* 152 Conn. 312, 206 A.2d 428; *Bredice* v. *Norwalk,* 152 Conn. 287, 206 A.2d 433; *Peterson* v. *Norwalk,* 150 Conn. 366, 190 A.2d 33; *Lacava* v. *Carfi,* 140 Conn. 517, 101 A.2d 795; *Bassett* v. *Desmond,* supra; *Mooney* v. *Clark,* 69 Conn. 241, 37 A. 506. Such actions, however, differ materially from the present one instituted by the plaintiffs to challenge the very

constitutional and legal existence of the munici-
pality.

The city of Danbury as it has existed since Janu-
ary 1, 1965, is at least a de facto municipal govern-
ment "in which the original town organization and
government and that of a city . . . contained within
it, have been combined . . . and superseded by a single
municipal government exercising the administrative
and other powers and assuming the duties formerly
vested in and imposed upon both." *Stamford* v.
*Stamford,* 107 Conn. 596, 602, 141 A. 891; 37 Am.
Jur. 637, Municipal Corporations, § 21. It is at least
a new de facto municipal corporation which has
taken the place of the old ones which ceased to exist
and can no longer exercise any corporate powers
unless their existence is expressly continued for
some specific purpose. Ibid. "Consolidation" means
"the unification of two or more corporations by dis-
solution of existing ones and creation of a single
new corporation." Webster, Third New Interna-
tional Dictionary. The consolidated city claims to
exist, not by the exercise of any charter powers
granted to either of the preexisting constituent cor-
porations, but independently of any such powers
under the color of a particular authority delegated
by the General Assembly under the provisions of the
Home Rule Act. *Sloane* v. *Waterbury,* 150 Conn. 24,
31, 183 A.2d 839. It follows that the action taken to
form the consolidated city of Danbury pursuant to
the Home Rule Act to the extent described in the
stipulation of facts was at least effective to establish
a de facto municipal government. *Regional High
School District No. 3* v. *Newtown,* 134 Conn. 613,
619, 59 A.2d 527; *State* v. *Carroll,* 38 Conn. 449, 473.

The adoption of charters and amendments to char-
ters pursuant to the authority of home rule statutes,

with frequent uncertain provisions governing their exercise by the local electorate, have within more recent years given rise in this country to many attacks upon the validity of municipal organizations and to the application of what is called the doctrine of de facto municipal corporations. The doctrine and some of its implications are discussed at length in an article by Charles W. Tooke in volume 37 of the Yale Law Journal, page 935, entitled "De Facto Municipal Corporations under Unconstitutional Statutes." It is summarized in the first two paragraphs of this article.[2] The rule is stated in the 1967 Cumulative Supplement (p. 37) to 37 Am. Jur., Municipal Corporations, § 19: "The de facto doctrine in the case of a municipal corporation is applicable not only where the whole legal existence of the municipal corporation is challenged, but also where there has been an abortive attempt to revise or reincorporate an existing de jure government. Thus, the validity of a municipal corporation's revised charter and of acts done pursuant to its provisions may not be col-

---

[2] "[37 Yale L.J. 935.] The doctrine of de facto municipal corporations is one peculiar to American law, developed by our courts from the English doctrine of de facto officers to meet the complex situations arising from time to time due to the constantly shifting bases of our municipal organization. Briefly stated, the doctrine is that where there is authority in law for a municipal corporation, the organization of the people of a given territory as such a corporation under color of delegated authority, followed by . . . [a] user in good faith of the governmental powers incidental thereto, will be recognized by the law as a municipal corporation de facto, wherever through the failure to comply with the constitutional or statutory requirements the corporation cannot be said to exist de jure.

"The resulting incidents of such a status are that the organization itself and those dealing with it as a corporation cannot attack its existence, that its acts are as valid as those of a de jure corporation, and that the legality of its existence cannot be inquired into collaterally, but may be challenged only by the state itself in quo warranto proceedings. . . ."

laterally questioned, irrespective of the fact that the user of the charter has not prevailed for long, on the ground that the election at which it was adopted was inadequately advertised and the proposition was defectively submitted where there was a bona fide attempt to comply with the constitutional and statutory requirements." In 62 C.J.S. 109, Municipal Corporations, § 32, it is stated that "where the municipality is at least a de facto corporation, or is acting under color of law, the validity of its organization and corporate existence can be questioned only by the state in a direct proceeding for that purpose, prosecuted by, or brought through the instrumentality of, the attorney general or such other officer or person as is authorized to invoke the remedy, or by some individual, under the authority of the state, who has a special interest which is affected by the existence of the corporation; it cannot be questioned in a collateral proceeding, especially in a suit by or against an individual." In 9 McQuillin, Municipal Corporations (3d Ed. Rev.) § 27.53, p. 753, it is noted that "[t]he prevailing rule is that only the state may question the creation or impeach the corporate existence of municipal corporations, and ordinarily it cannot be done, either directly or indirectly, by a private person or corporation." Also, "[q]uo warranto proceedings to test the legality of the corporate existence of a municipal corporation cannot be brought by another municipality, or by private individuals unless the statutes so provide." 17 McQuillin, Municipal Corporations (3d Ed. Rev. 1967) § 50.09, p. 424; see also note, 7 A.L.R.2d 1407.

In holding that the legality of the organization or reorganization of a city cannot be questioned in a collateral proceeding or at the suit of a private

individual but that it must be prosecuted by the state acting through its proper officers, the Kansas Supreme Court in 1966 in *Babcock* v. *Kansas City,* 197 Kan. 610, 612, 419 P.2d 882, quoting from *Atchison, T. & S.F. R. Co.* v. *Wilson,* 33 Kan. 223, 228, 6 P. 281, stated the generally accepted reason for the rule: "It would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons." See also *Tulare Irrigation District* v. *Shepard,* 185 U.S. 1, 13, 14, 22 S. Ct. 531, 46 L. Ed. 773; *Humble Oil & Refining Co.* v. *Wojtycha,* 48 N.J. 562, 226 A.2d 837; *Wright* v. *Phelps,* 89 Vt. 107, 94 A. 294; *Fairview* v. *Spears,* 210 Tenn. 404, 359 S.W.2d 824; *Bowman* v. *City of Moorhead,* 228 Minn. 35, 36 N.W.2d 7.

By the citation of these authorities we do not mean to suggest that the stipulated facts indicate any unconstitutionality or illegality in the organization of the defendant city. We do not decide that. Our decision goes no further than to hold that the plaintiffs have no standing as individuals to challenge in such an action as this the constitutional and legal existence of the city of Danbury.

We refuse to answer the questions reserved.

No costs shall be taxed in this court in favor of any party.

In this opinion the other judges concurred.