**PORT VALDEZ COMPANY, INC., a Washington corporation, Appellant,**

v.

**CITY OF VALDEZ, Alaska, a municipal corporation, et al., Appellees.**

**No. 1996.**

Supreme Court of Alaska.
May 20, 1974.

---

1148

John W. Pletcher, III, Merdes, Schaible, Staley & DeLisio, Anchorage, for appellant.

Kenneth P. Jacobus, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee City of Valdez.

David B. Ruskin, Anchorage, for appellee Local Boundary Comm.

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER and FITZGERALD, Justices, and DIMOND, Justice Pro Tem.

## OPINION

BOOCHEVER, Justice.

The instant action chronicles the latest chapter in the acrimonious relationship between the Port Valdez Company, plaintiff and appellant here, and the City of Valdez, Alaska.[1] At stake is the validity of a substantial annexation by the city of land which encompasses a parcel of the company's property. Underlying this more abstract determination is the legality of the tax burden the city seeks to impose upon the company's land.

The earthquake of March 27, 1964 rendered the former site of the City of Valdez unsuitable for human habitation or commercial development; the city was rebuilt on property formerly owned by the company.[2] As the rebuilt community strengthened its foothold on the southcentral coast of Alaska, expansion occurred beyond the boundaries of the land deeded after the earthquake. Simultaneously, the prospect that Valdez would become the terminus for the pipeline from the North Slope oilfields led to predictions of substantial municipal growth. In order to conform the city's boundaries to the existing area of actual services rendered, to extend full municipal services to the adjacent area and to plan for future growth, on November 5, 1969, the City of Valdez petitioned the Local Boundary Commission for an extention ot its boundaries to include the entire port area and adjacent territory. The proposed annexation comprised 274 square miles, of which the company owns less than one square mile. After the city filed a supplemental petition, the commission held a public hearing on the proposed annexation, at which the company protested the proposal. The commission approved the annexation at its January 4, 1970 business meeting. The annexation became effective when, after proper presentation, the legislature failed to disapprove the commission's action.[3] A certification of boundaries was duly filed by the commission, noting that the annexation became effective March 8, 1970.

Immediately after the annexation became effective, the company began negotiations with the city concerning the company's tax burden on that portion of its land which had been included in the restructured city. Some temporary compromises were effected, but when no ultimate solution was agreed upon, the company paid $18,335 in assessed taxes under protest and filed this action seeking declaratory relief invalidating the annexation and restoration of the taxes paid under protest. The action was filed on December 20, 1971, more than a year and nine months after the effective date of the annexation.

In its suit against the city, the company contended that a step annexation had been

---

1. *See* Port Valdez Co. v. City of Valdez, 437 P.2d 768 (Alaska 1968).

2. *Id.* at 769.

3. Alaska Constitution, art. X § 12 provides: A local boundary commission or board shall be established by law in the executive branch of the state government. The commission or board may consider any proposed local government boundary change. It may present proposed changes to the legislature during the first ten days of any regular session. The change shall become effective forty-five days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house. The commission or board, subject to law, may establish procedures whereby boundaries may be adjusted by local action.

effected.[4] It charged that the annexation was void because the Local Boundary Commission failed to promulgate standards for annexations, failed to promulgate standards for step annexations, failed to hold the election required by the step-annexation legislation, failed to create a transition schedule for provision of municipal services to the annexed area and failed to establish prorated tax mill levies proportional to the services provided, as required by the same legislation. The city, the commission and the state in their answers denied the allegation that the Valdez annexation was a step annexation, and challenged the validity of the legal theories underlying the company's complaint. They also asserted immunity under the doctrine of de facto municipal incorporation as an affirmative defense. Later, the affirmative defense of laches was raised without procedural objection from the company.

After cross-motions for summary judgment, the superior court held a hearing at which Owen Meals, president of the Port Valdez Company, and Herbert W. Lehfeldt, city manager of the City of Valdez, testified. Most of the testimony was directed to the issues of de facto corporation immunity and laches. The court granted summary judgment for the city, primarily because he found the annexation immune from attack under the doctrine of de facto municipal incorporation. Findings favorable to the city on the step-annexation and laches issues were also made. This appeal followed.

We must decide whether the annexation suffered from any defect which could cause its invalidity, and, if so, whether the annexation is immune from attack either under the doctrine of de facto municipal incorporation or because the suit is barred by laches.

## APPLICATION OF THE STEP–ANNEXATION PROVISIONS

The company first contends that the commission failed to hold an election and follow other procedures mandated by the step-annexation provisions of the statute regulating local boundary changes.[5] However, the company has never made clear why the Valdez annexation ought to be considered a step annexation. The Alaska Constitution, art. X § 12[6] established two methods by which local boundaries might be changed: (1) by direct action of the Local Boundary Commission subject to legislative disapproval,[7] and (2)

---

4. The legislature has provided for gradual, as opposed to immediate annexation. AS 44.19.-260(a)(4) provides:

 The local boundary commission shall

 . . . . .

 (4) develop standards and procedures for the extension of services and ordinances of incorporated cities into contiguous areas for limited purposes upon majority approval of the voters of the contiguous area to be annexed and prepare transition schedules and prorated tax mill levies as well as standards for participation by voters of these contiguous areas in the affairs of the incorporated cities furnishing services. AS 44.19.260(b)(2) provides:

 The local boundary commission may

 . . . . .

 (2) present to the legislature during the first 10 days of a regular session proposed local government boundary changes, including gradual extension of services of incorporated cities into contiguous areas upon a majority approval of the voters of the contiguous area to be annexed and transi-

 tion schedules providing for total assimilation of the contiguous area and its full participation in the affairs of the incorporated city within a period not to exceed five years.

5. The step-annexation provisions of AS 44.19.-260 are set out *supra*, n. 4.

6. Alaska Constitution, art. X § 12 is set out in full *supra*, n. 3.

7. We have previously recognized that the intention of the constitutional provision and its implementing statute, AS 44.19.260, was to provide an objective administrative body to make state-level decisions regarding local boundary changes, thus avoiding the chance that a small, self-interested group could stand in the way of boundary changes which were in the public interest. In Fairview Public Utility District No. 1 v. City of Anchorage, 368 P.2d 540, 543 (Alaska 1962), appeal dismissed, 371 U.S. 5, 83 S.Ct. 39, 9 L.Ed.2d 49 (1962) we said:

 An examination of the relevant minutes [of the constitutional convention] shows clearly

by establishment by the commission of procedures for the adjustment of boundaries by local action. The legislature implemented art. X § 12 in 1959 by enacting AS 44.19.260. Only the simple, direct annexation by the commission was authorized at that time.

The step-annexation provisions were added to AS 44.19.260 in 1964.[8] As an alternative to immediate annexation, these provisions allow for gradual assimilation of contiguous areas into incorporated cities where direct annexation would be premature or impractical. Ordinarily, a step annexation will be commenced by a municipality's petition specifically requesting that alternative,[9] although presumably the commission could require the municipality to annex by the step method. In the instant case the company has adduced no evidence that either the city or the commission contemplated a step annexation. The original petition requested a direct annexation and the certification of boundaries (a document similar to a judgment accompanied by findings of fact, which formally establishes the new boundaries) contains not a single fact, conclusion or order suggesting that a step annexation was contemplated. Since the city did not request and the commission did not certify a step annexation, the requirements for step annexation are not applicable.

The company has argued that because service areas with differing municipal services and tax rates were established *after* the annexation, the annexation must be considered to have been effected by the step method. We find the selection of annexation method made by the commission and approved by the legislature to be controlling. The company's argument amounts to an assertion that the differing municipal services and tax rates demand the choice of the step method. We find no such fetters imposed upon the commission's discretion. The policy decision as to the mode of annexation is an exercise of lawfully vested administrative discretion which we will review only to determine if administrative, legislative or constitutional mandates were disobeyed or if the action constituted an abuse of discretion.[10] The company has adduced no facts from which we can conclude that the approval of direct annexation for the Valdez expansion constituted an abuse of discretion. The company relies upon the statement of the city that one of the purposes of the annexation was the extension of services into unincorporated territory. This argument misses the point that all annexations will have the purpose and effect, in part, of extending city services. The post-annexation creation of differently served and treated areas does not impugn the reasonableness of the

the concept that was in mind when the local boundary commission section was being considered: that local political decisions do not usually create proper boundaries and that boundaries should be established at the state level.

*See* Oesau v. City of Dillingham, 439 P.2d 180, 183–184 (Alaska 1968).

8. Ch. 55 SLA 1964. The local action provision has also been implemented by legislation (AS 29.68.010) and by administrative action (19 AAC § 15.010 et seq.).

9. 19 AAC § 10.190 provides:
 An annexation petition submitted to the Local Boundary Commission may request that during each of not more than five full fiscal years after the annexation takes effect, the rate of taxation for city services on the annexed properties shall be at a specified percentage of the full city tax rate. The proposal shall provide an increase from fiscal year to fiscal year until the percentage equals 100 percent of the full city tax rate. The city may not tax annexed property at a rate other than the percentage authorized for that year. Provided, however, that the municipality pursuant to AS 29.53.405 may levy taxes in the annexed area at a different percentage from that authorized for the year in question, if such difference is attributed to the cost of provision in the territory of a special service not supported by the general municipal levy.

10. Mobil Oil Corp. v. Local Boundary Commission, 518 P.2d 92, 98 (Alaska 1974); King v. Alaska State Housing Authority, 512 P.2d 887, 893–895 (Alaska 1973); Kingery v. Chapple, 504 P.2d 831, 834 (Alaska 1972); Kelly v. Zamarello, 486 P.2d 906, 911 (Alaska 1971).

annexation.[11] Nor can the company point to any constitutional, statutory or administrative provision which requires that an annexation of territory like that absorbed by the City of Valdez be accomplished by the step method.

We therefore hold that the Valdez annexation was undertaken by the direct method rather than the step method.[12] It follows that the company's contentions regarding the necessity of an election, schedule of services and tax mill levies as mandated by the step-annexation provisions are without merit.

## FAILURE OF THE COMMISSION TO ADOPT STANDARDS

■ The proceedings before the commission respecting the Valdez annexation —petition, public hearing and formal approval—all took place in late 1969 and early 1970. The appellees admit that the commission had not, at that time, adopted standards for changing local boundary lines as required by AS 44.19.260.[13] In United States Smelting, Refining & Mining Co. v. Local Boundary Commission,[14] we held that the failure of the commission to adopt such standards before public hearings into an annexation are held, and before it submitted proposals to the legislature, made the annexation voidable upon timely attack. We found the failure to promulgate legislatively-mandated standards before the *Nome* hearings to be so unreasonable as to undermine the validity of the annexation.

The commission acted on the Valdez annexation almost a year after its *Nome* hearings. The continued failure to have promulgated standards makes the Valdez annexation *a fortiori* voidable and prima facie illegal.[15] Therefore, the present annexation is null and void unless validated by some overriding doctrine.

## DE FACTO INCORPORATION

■■ The doctrine of de facto municipal incorporation was developed by American courts in the nineteenth century. Its purpose was to insulate nascent local governments from devastating disincorporations resulting from private attacks based upon minor procedural errors which were common to the formation of such governments by laymen.[16] One early commentator well summarized the principle:

> Briefly stated, the doctrine is that where there is authority in law for a municipal corporation, the organization of the people of a given territory as such a corporation under color of delegated authority, followed by a user in good faith of the governmental powers incidental thereto, will be recognized by the law as a municipal corporation de facto, wher-

11. The service areas were created under authority of a city charter amendment implemented by a city ordinance; there was no question raised by the company respecting the validity of either.

12. We note that the superior court loosely referred to the Valdez annexation as a "step annexation" during argument on the cross-motions for summary judgment. However, the findings of fact and conclusions of law contain no such statement. The superior court did conclude: "AS 44.19.260 does not require, under the facts of this particular case, that a local election be held to approve this annexation." We take this conclusion to mean that the court found the Valdez annexation not to be a step annexation.

13. AS 44.19.260 provides:
The local boundary commission shall

(2) develop proposed standards and procedures for changing local boundary lines. . . .

14. 489 P.2d 140 (Alaska 1971) [hereinafter cited as *Nome*].

15. We note that the required standards were promulgated by the commission after our decision in the *Nome* case. *See* 19 AAC 05.010 et seq. October 13, 1972, Reg. 43.

16. Tooke, De Facto Municipal Corporations Under Unconstitutional Statutes, 37 Yale L.J. 935, 935–39 (1928); Rothkopf v. City of Danbury, 156 Conn. 347, 242 A.2d 771, 776 (1968); Clement v. Everest, 29 Mich. 19, 22 (1874), quoted I Antieau, Municipal Corporation Law § 1.08 at 26.

ever through the failure to comply with the constitutional or statutory requirements the corporation cannot be said to exist de jure.[17]

Where the doctrine of de facto incorporation applies, private parties may not successfully bring a suit challenging the legality of corporate existence.[18]

■ Disincorporation of a municipality substantially disrupts the life and livelihood of anyone associated with the municipality. Among the deleterious consequences of a disincorporation are the diselection of public officials, invalidation of corporate actions (possibly creating individual liability on the part of public officials or unjustly depriving employees, contractors and other creditors of claims against the corporate body), and voiding of actions taken under the police, taxation and eminent domain powers. Not all these consequences necessarily flow from a disannexation as distinguished from a total disincorporation. The governmental entity retains its charter, at least with respect to its boundaries prior to the annexation.

Nevertheless, substantial disruption similar to the results of disincorporation may occur. We therefore conclude that an annexation is a corporate reorganization of sufficient dignity so that an attack upon it challenges the corporate essence in a manner justifying the application of the doctrine of de facto municipal incorporation.

We presaged our application of the doctrine of de facto incorporation to such cases when we said, in a footnote in the *Nome* case: "Existing cities with Local Boundary Commission created boundaries remain unaffected by our holding in this case under the *de facto* municipality doctrine."[19] the *Nome* case inferentially held the doctrine of de facto municipal incorporation inapplicable because the Nome annexation was challenged within two months of its effective date, and there was no evidence that the city had exercised any municipal powers in the annexed area.[20] In our *Nome* decision, we cited a recent case decided by the Supreme Court of Connecticut holding that a merger of two municipalities was immune from private attack under the doctrine of de facto munici-

---

17. Tooke, *supra* n. 16 at 935.

18. Claus v. City of Fairbanks, 95 F.Supp. 923, 926, 13 Alaska 201 (D.Alaska 1951); Cooper v. Leslie Salt Co., 70 Cal.2d 627, 75 Cal.Rptr. 766, 770, 451 P.2d 406, 410 (Cal. 1969), cert. denied, 396 U.S. 821, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969). *Claus* and *Cooper* involve respectively a utility board and a special improvement district, quasi-municipalities, but the principles there set forth apply to municipalities. *See* I Antieau, Municipal Corporation Law § 1.08; I McQuillin, Municipal Corporations § 3.49.

*But cf.* AS 09.50.310.

An action may be brought by the attorney general upon his own information or upon complaint of a private party against . . . (3) any number of persons acting as a corporation without being incorporated.

That statute is the modern equivalent of quo warranto, which previously was held to be the sole means of attack upon a de facto corporation, municipal or private. People of Territory of Alaska ex rel. Bowman v. Alaska Airlines, Inc., 108 F.Supp. 274, 276, 14 Alaska 85, 88–89 (D.Alaska 1952), rev'd on other grounds, Alaska Airlines, Inc. v. People of Territory of Alaska ex rel. Bowman, 206 F.2d 203, 14 Alaska 363 (9th Cir. 1953); Turkington v. City of Kachemak, 380 P.2d 593, 596 (Alaska 1963). AS 09.50.310 clearly contemplates an action *by the attorney general*, not by a private party. The only court which has entertained an action by a private party under AS 09.50.310 or its predecessors allowed such action only upon a showing that the interest of the private party in the action outweighed the public interest and that demand upon the appropriate authority to institute action either had been made or would be futile. People of Territory of Alaska ex rel. Bowman v. Alaska Airlines, Inc., 108 F.Supp. at 276, 14 Alaska at 88, rev'd on other grounds, 206 F.2d 203, 14 Alaska 363. The Port Valdez Company has not sought to bolster this lawsuit by reference to AS 09.50.310, and we need not further concern ourselves with interpretation of that statute.

19. United States Smelting, Refining & Mining Co. v. Local Boundary Commission, 489 P.2d at 144 n. 15.

20. *See* Record, Civil Action 68–117, Superior Court, First Judicial District, Juneau, at 1 ff.

pal incorporation.[21] Courts of other states have held that annexations are subject to the doctrine.[22] We hold that the doctrine of de facto municipal incorporation applies to annexations and proceed to apply the doctrine to the facts of the Valdez annexation.

■ Adapting the most generally accepted definition of the doctrine to annexations, the following four elements must be present in order for a prima facie voidable annexation to escape challenge: (1) a constitutional or statutory provision under which the annexation might lawfully have been accomplished; (2) an attempted compliance in good faith with the provision(s); (3) a colorable compliance with the provision(s); and (4) an assumption in good faith of municipal powers over the annexed territory.[23] AS 44.19.260[24] and procedural regulations promulgated by the commission[25] clearly provide a framework under which an annexation such as that proposed by the City of Valdez could lawfully be effected. The company cannot seriously dispute that the city attempted in good faith to comply with the statute since the city followed the only statutory procedure then available for annexation, and the record is devoid of any evidence of bad faith. The vital elements in testing the Valdez annexation are whether the city colorably complied with the statutes, and whether it sufficiently assumed corporate powers over the annexed territory (again, there is no dispute that whatever power the city exercised, it did so in good faith).

■■ Courts have often interpreted the colorable compliance requirement to mean that a defect, in order to render an incorporation or annexation void, must be material, as opposed to technical.[26] The unique

21. Rothkopf v. City of Danbury, 156 Conn. 347, 242 A.2d 771.

22. Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424, 426–427 (1939), *approved in* Gorman v. City of Phoenix, 70 Ariz. 59, 216 P.2d 400, 403 (1950); Hazleton v. City of San Diego, 183 Cal.App.2d 131, 6 Cal.Rptr. 723, 726 (1960), cert. denied, 366 U.S. 910, 81 S.Ct. 1084, 6 L.Ed.2d 235 (1961), reh. denied, 368 U.S. 870, 82 S.Ct. 25, 7 L.Ed. 2d 71 (1961); Griffin v. City of Canon City, 147 Colo. 15, 362 P.2d 200, 201 (1961); Petition of Kansas City, 190 Kan. 308, 374 P.2d 35, 39 (1962); Saylor v. Town of Wallins, 220 Ky. 651, 295 S.W. 993, 994 (1927); White v. City of Columbia, 461 S.W.2d 806, 807 (Mo.1970); Kuhn v. City of Port Townsend, 12 Wash. 605, 41 P. 923, 925 (1895). The only contrary authority may be found in Boise City v. Better Homes, Inc., 72 Idaho 441, 243 P.2d 303, 305 (1952). But the *Boise City* case allows attack only for a "jurisdictional defect". *Id*: at 306. The only state other than Alaska which employs a statewide commission to adjust local boundaries, Minnesota, has not been forced to reach the issues presented here because decisions of its commission are appealable under its administrative procedure act. 1971 Minn. Stat. § 414.07 subdn. 2. Ordinary principles of administrative law apply. *See* Village of Goodview v. Winona Area Industrial Development Association, 289 Minn. 378, 184 N.W.2d 662, 664 (1971).

23. *See* I McQuillin, Municipal Corporations § 3.48a at 319–20; I Antieau, Municipal Corporation Law § 1.03; *e. g.*, Cooper v. Leslie Salt Co., 70 Cal.2d 627, 75 Cal.Rptr. 766, 770, 451 P.2d 406, 410.

24. AS 44.19.260 provides in part:
 (a) The local boundary commission shall
 . . . . .
 (3) consider a local government boundary change requested of it by the legislature, the director of local affairs, or a political subdivision of the state; and
 . . . . .
 (b) The local boundary commission may
 (1) conduct meetings and hearings to consider local government boundary changes and other matters related to local government boundary changes, including extensions of services by incorporated cities into contiguous areas and matters related to extension of services; and
 (2) present to the legislature during the first 10 days of a regular session proposed local government boundary changes. . . .

25. Despite the failure to promulgate *standards*, the commission long has operated under detailed procedural regulations in annexation cases. The current version, 19 AAC § 10.010 et seq., is similar to the one in force at the time of the Valdez annexation, Reg. 7, eff. Sept. 26, 1962.

26. Claus v. City of Fairbanks, 95 F.Supp. at 926; Peterson v. Bountiful City, 25 Utah 2d 126, 477 P.2d 153, 155 (1970). *See* State ex rel. Landis v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327 (1937); City of Delphi v. Startzman, 104 Ind. 343, 3 N.E.

Alaska annexation procedures present problems different from those encountered by other courts in determining whether a defect is material or not. Courts in other jurisdictions ordinarily must review only the actions of the municipality in assessing the validity of the annexation; annexations effected through Local Boundary Commission procedures receive a full administrative hearing, followed by legislative review, before they are subjected to judicial scrutiny. The complex social, political and economic judgments leading to the decision as to whether an annexation is wise fall more properly within administrative and legislative competence; ordinarily those decisions will be overturned only when they involve an abuse of discretion.[27] The more common challenge to Local Boundary Commission action, that made here by the company, attacks the procedures by which the substantive decisions were made. Where the other elements of the de facto incorporation doctrine exist, a procedural challenge following both administrative and legislative review should succeed only where it is clear that the defective procedures prevented the opponents of annexation from fully and fairly presenting their case to the reviewing bodies. The proper test to determine whether a procedural defect is so material that it vitiates colorable compliance with the applicable statute and thereby strips the annex-

ation of de facto municipality protection parallels the test of plain error in civil cases: whether the error is so substantial as to result in injustice.[28] In this instance the injustice, if any, would be caused by preventing the full and fair expression of opposing viewpoints. The errors alleged by the company must be tested according to this standard.

 The company has not alleged that any material argument against the annexation was suppressed or overlooked at the public hearing because of the commission's failure to promulgate standards. We see three purposes underlying the statutory requirement of annexation standards. First, such standards expose the basic decision-making processes of the commission to public view and thus subject commission action to broad corrective legislation.[29] Second, the standards guide local governments in making annexation decisions and in preparing proposals for the commission. Frustration of these purposes cannot harm the opponent of annexation. Third, annexation standards objectify the criteria of decision-making and delineate the battleground for a public hearing,[30] but we cannot perceive how the absence of such delineation in any manner prevented full and fair expression of the company's position at the hearing on the Valdez annexation. The failure to promulgate standards for

937, 939–940 (1885); Your Food Stores, Inc. (NSL) v. Village of Espanola, 68 N.M. 327, 361 P.2d 950, 956–957 (1961), cert. denied, 368 U.S. 915, 82 S.Ct. 194, 7 L.Ed.2d 131 (1961); City of West Lake Hills v. State ex rel. City of Austin, 466 S.W.2d 722, 727 (Tex.1971); cf. Johnson v. Sandy City Corp., 28 Utah 2d 22, 497 P.2d 644, 645 (1972). *See generally* I McQuillin, Municipal Corporations § 348a, at 320 (1971 rev. ed.).

27. *See* n. 10, *supra.* We do not here decide whether annexation decisions are reviewable for reasonableness. Appellant has urged that position, but the issue was not raised in the superior court.

28. *See* Malvo v. J. C. Penney Co., 512 P.2d 575, 585 n. 14 (Alaska 1973); Bolden v.

City of Kodiak, 439 P.2d 796, 800 n. 16 (Alaska 1968).

29. Our *Nome* opinion focused upon the commission's failure to heed the legislature's commands in exercising the commission's jurisdiction and publicly accounting for its decisional process:

To [hold] otherwise would be to condone the commission's nonobservance of a valid legislative prerequisite to the exercise of the commission's discretion in matters of local boundary changes.

United States Smelting, Refining & Mining Co. v. Local Boundary Commission, 489 P. 2d at 142.

30. *See* Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc., 516 P.2d 408, 415 n. 23 (Alaska 1973).

annexations was not an error so substantial as to result in injustice.

Having already held that the company failed to prove that the Valdez annexation was a step annexation, we need not question further whether the failure to promulgate standards for step annexations worked an injustice upon the company.[31]

■ Based on the undisputed facts, the superior court granted summary judgment, holding that the city had exercised sufficient municipal powers in the annexed area so that the doctrine of de facto incorporation was satisfied. At the time of the hearing on the motion for summary judgment, one elected city councilman and several appointed commissioners and committee members lived in the annexed area; city schools served the children in the annexed area; the city had expended $90,000 (some of which was donated) for a comprehensive development plan for the newly annexed territory; the city provided police and fire protection to the annexed area; the city provided ambulance service for the annexed area; refuse collection and animal control services were extended; and the city library services were open to residents of the annexed area. The company disputes none of these facts, except to say that some services were initiated before the annexation or after the commencement of the litigation.[32] We hold that the trial court did not err in finding that the City of Valdez exercised sufficient municipal powers under the annexation order in the annexed area to satisfy the doctrine of de facto incorporation.

We conclude that the commission's failure to promulgate standards, the only error we find at the administrative level of these proceedings, renders the annexation voidable; timely attack before the city had exercised its municipal powers under the annexation order would have led to the same result as *Nome*—disannexation.[33] However, the doctrine of de facto municipal incorporation insulates from collateral attack annexations not impeccably effected where the annexation is attempted under a proper statute, a good faith effort is made to comply with the statute, the statute is colorably complied with, and the municipality has exercised its powers in good faith within the annexed territory. The first two elements of this test are incontestible here, and we hold that the decision of the superior court that the other two are satisfied was not in error under the facts of this case. The company's attack upon the Valdez annexation therefore must fail, and the judgment of the superior court must be affirmed.[34]

Affirmed.

ERWIN, J., not participating.

---

31. We note, however, that failure to hold an election or otherwise obtain popular approval where constitutionally or statutorily required has been held to be a material error. Peterson v. Bountiful City, 25 Utah 2d 126, 477 P.2d 153, 155 (1970); Barton v. Stuckey, 121 Okl. 226, 248 P. 592 (1926).

32. The expenditure of $90,000, refuse and animal control activities and the election and appointment of officials all occurred after the annexation and before the filing of this lawsuit. The company has not pressed an argument that services rendered between the filing of the lawsuit and the motion for summary judgment cannot be considered, and we do not decide the issue. The rendition of services during such litigious interstices in the life of the polity emphasizes the necessity of expeditious judicial *post hoc* review of annexations. It is unfair that citizens of the annexed territory should suffer interruption of services because someone files a lawsuit; it is unfair to the challenger to allow the municipality to enhance its position during the pendency of litigation; it is unfair to the municipality to require expenditure of revenues in a territory which may be severed. Challenges to annexations should therefore be filed promptly, before the ship of state is forced to sail between this Scylla and Charybdis.

33. In *Nome*, the annexation was challenged within two months of its effective date. The corresponding interval here was one year and nine months. There was no evidence in *Nome* that the city had exercised any municipal powers in the annexed area.

34. In view of our holding, we need not consider the defense of laches.