SUNRISE MANOR TOWN PROTECTIVE ASSOCIATION, JOHN N. CATHA, ET AL., APPELLANTS, v. CITY OF NORTH LAS VEGAS, A MUNICIPAL CORPORATION, RESPONDENT.

No. 7621

October 30, 1975                    541 P.2d 1102

[Rehearing denied December 8, 1975]

*Harry J. Mangrum, Jr.,* of Las Vegas, for Appellants.

*Paul H. Schofield,* City Attorney, North Las Vegas, for Respondent.

*Albright & McGimsey,* Special Counsel, City of Las Vegas, *Kent J. Dawson,* City Attorney, City of Henderson, and *James E. Ordowski,* City Attorney, City of Boulder City, for Amicus Curiae.

## OPINION

By the Court, ZENOFF, J.:

This court in County of Clark v. City of North Las Vegas, 89 Nev. 10, 504 P.2d 1326 (1973), ruled invalid two annexation ordinances adopted by the City of North Las Vegas. We held that a proper construction of NRS 268.582 rendered the petitions for annexations inadequate and that the action by the City in confirming the annexations was invalid. The taxpayers now seek return of their monies paid during the period of the annexation. The trial court denied them relief on the ground that the annexations were de facto and therefore effective for the period of time that they were approved by the trial court until subsequently our decision reversing that judgment on appeal was rendered.

In relation to that determination the trial court ruled that the City of North Las Vegas acted under color of delegated authority and valid statutes in attempting annexations nos. 38 and 41, that there was colorable compliance with the annexation statutes, that the City had assumed full responsibility for the annexed areas and during such annexation period provided all municipal services thereto and that any errors in regard to these annexations were technical errors.

The above-stated finding by the trial court that services were provided to the annexed areas is undisputed. We feel, also, that to avoid these damages a stay of execution of the trial court's approval of the annexations or a writ of prohibition to halt its enforcement pending the original appeal should have been sought. In those instances the final decision would have come earlier and the payments avoided. Instead, the City, acting in reliance on the trial court's judgment, proceeded with the annexations, the collection of the taxes and the providing of services to the annexed areas.

De facto annexation is predicated on the prevention of substantial disruptions that may result in the disannexation of an

area. For the concept of de facto annexation to be applied four elements must be present: (1) a constitutional or statutory provision under which the annexation might lawfully have been accomplished; (2) an attempted compliance in good faith with the provisions; (3) a colorable compliance with the provisions; and (4) an assumption in good faith of municipal powers over the annexed territory. Port Valdez Company, Inc. v. City of Valdez, 522 P.2d 1147 (Alaska 1974); Ash Realty Corporation v. City of Milwaukee, 130 N.W.2d 260 (Wis. 1964); see also Peterson v. Bountiful City, 477 P.2d 153 (Utah 1970). We are concerned here with the issue of whether or not there was colorable compliance.

Colorable compliance with the statutory provisions does not exist if the defect is of a material nature as opposed to a technical defect. Port Valdez Company, Inc. v. City of Valdez, supra; Peterson v. Bountiful City, supra. Whether a procedural defect is so material that it vitiates colorable compliance with the applicable statute and thereby strips the annexation of de facto municipality protection parallels the test of plain error in civil cases; whether the error is so substantial as to result in injustice. Port Valdez Company, Inc. v. City of Valdez, supra.

Our holding in County of Clark v. City of North Las Vegas, supra, was that as to annexation no. 38, the petition did not properly describe the unincorporated areas developed for urban purposes which was proposed for annexation; as to annexation no. 41, the petition did not contain the necessary number of signatures as required by statute. Our task on that appeal was to construe the uncertainty of the meaning of NRS 268.-582 as to what constituted the basis for determination of the "10 percent of property owners" required for an annexation petition. Not until the entry of that opinion was doubt removed and the defect in the annexation petitions determined. Until then how many signatures were required for how much area was anybody's guess except that areas were described and signatures affixed in good faith to a reasonable approximation. It is apparent that in a case such as this where a statutory interpretation must be rendered in order to determine the validity of an annexation petition that there is colorable compliance with the statutory provisions until such interpretation is made. Further, such an error is of a technical and unsubstantial nature under these circumstances. This was not the case in

Peterson v. Bountiful City, supra, where the statute was clear but the number of signatures was still nevertheless insufficient.

We agree with the trial court's application of the doctrine of de facto annexation and that de facto annexation existed in this case. To compel the City of North Las Vegas to give the taxpayers their money back after the services for which the taxes were collected were performed would be manifestly unfair.

The only other issue raised on appeal that need be discussed is appellants' assertion that the trial court improperly disallowed the awarding of attorney fees. Appellants fail to cite any authority for this claimed' error and thus it need not be considered. General Electric Co. v. Bush, 88 Nev. 360, 498 P.2d 366 (1972). Further, NRS 18.010(3)(a) allows attorney fees to be awarded only if a plaintiff is the prevailing party, which appellants were not in this action for damages.

Affirmed.

MOWBRAY and THOMPSON, JJ., concur.

GUNDERSON, C. J., with whom BATJER, J., agrees, dissenting:

I cannot agree that the facts of this case in all respects meet the four requirements necessary for de facto annexation, as defined by the majority, i.e. (1) a statutory scheme; (2) attempted compliance in good faith; (3) colorable compliance; and (4) an assumption in good faith of municipal power over the annexed property.

Our original opinion, wherein we declared the attempted annexation of Parcels Nos. 38 and 41 "wholly nugatory," was filed January 10, 1973. 89 Nev. at 14. Because of intervening motions by the North Las Vegas City Attorney, the case was not actually remitted to the district court until March 29. On March 30, the district court ordered the annexed property returned to the county.

First, I suggest that as of January 10, 1973, if not before, the City of North Las Vegas had clear notice its exercise of municipal power was invalid. If, indeed, de facto annexation ever was present, it would have to terminate as of that date. From the record, one cannot discern if funds were taken by the City between January 10 and March 30, but the record most certainly does not foreclose this possibility, and most

certainly such funds could not have been taken in "good faith." During oral argument, the North Las Vegas City Attorney acknowledged this.[1] At a minimum, on remand, as its counsel candidly admits, the City should account for any monies received after January 10, 1973.

Second, I suggest colorable compliance never existed with respect to Parcel No. 38. Assuming that colorable compliance requires a defect of a technical rather than material nature, how can we consider the defects with respect to Parcel No. 38 merely technical? The problem with respect to Parcel No. 38 was more than a mere misdescription of the land. The City circulated a proper petition for Parcel No. 39 and then attempted to file the petition for the purpose of annexing No. 38, an area $\frac{1}{6}$ the original size. In effect, no petition at all has been filed. Of course, the petition contained an adequate number of signatures by landowners within Parcel No. 38—but these people signed the petition under the mistaken belief that a far larger parcel was to be annexed.

No one—and certainly not the North Las Vegas city fathers—could presume to say how the citizens would have reacted if they had been asked about Parcel No. 38, which the City ultimately sought to annex.

In Peterson v. Bountiful City, 477 P.2d 153 (Utah 1970), a case the majority have cited, the Utah Supreme Court allowed an action for return of funds where the city failed to secure the required number of landowners in favor of annexation. In City of Birmingham v. Bouldin, 190 So.2d 279 (Ala. 1966), the Alabama Supreme Court held annexation void because the statutory notice provision was not complied with prior to an annexation election. The defects involved in those cases were considered to be of a substantial nature.

---

[1]At oral argument, the following colloquy took place:

Chief Justice Gunderson: "I have a little difficulty seeing how the City could claim to be in good faith in taking the revenue beyond the time of our original decision, and I think you'd have to concede that, at that point, they were on rather clear notice that they did not hold property under color of law. Wouldn't you agree with that?"

Mr. Schofield: "I would agree to that right now, your honor."

Chief Justice Gunderson: "Do you think then that, at least insofar as the decision [now on appeal] fixes a date beyond our initial decision, that it is incorrect?"

Mr. Schofield: "I believe so, your honor. Again, I don't know if that's the case. I assume it is until the final order came down, but I would not argue at all with that. And that was not the intent, of course, of our argument on the motion to go on remittitur. That very question, in fact, has never come up before. But I would concur 100%. January 10 would be the date—"

At least as to Parcel No. 38, we are not concerned with a mere technical defect. Respondent simply failed to comply with the statutory scheme.